Matthias, J.
 

 This proceeding is instituted by the judgment creditors pursuant to the provisions of Sections 9510-3 and 9510-4, General Code, to enforce the right of subrogation thereby 'conferred upon them. The purpose and- effect of this statute is to afford the injured party direct and prompt benefit of the policy of the insured. It is well settled, however, that such statutory provisions do not and could not have the effect of placing the injured person in a favored position contrary to the terms of the policy. He succeeded to only such rights as the assured had against the com
 
 *230
 
 pany. The indemnity policy is a contract in which there are mutual undertakings and obligations by the insurance company and the assured. The principle is well settled in cases of this character that the injured person is subrogated to the rights of the assured. He has no greater right than the assured and cannot recover from the insurance company if the assured, by reason of any breach of the conditions of the policy, could not recover.
 
 Stacey
 
 v.
 
 Fidelity & Casualty Co. of New York,
 
 114 Ohio St., 633, 151 N. E., 718;
 
 Lorando
 
 v.
 
 Gethro,
 
 228 Mass., 181, 117 N. E., 185;
 
 Ocean Accident & Guaranty Corp., Ltd.,
 
 v.
 
 Schroeder,
 
 48 F. (2d), 727;
 
 Storer
 
 v.
 
 Ocean Accident & Guaranty Corp., Ltd.,
 
 80 F. (2d), 470.
 

 The policy enumerated certain definite and specific duties and obligations incumbent upon the assured which were there denominated as conditions precedent to the company’s liability under its policy, and the issue presented in this proceeding was the compliance or non-compliance with those conditions by the assured. As we have seen, the rights of the injured party can rise no higher than the rights of the assured. Under the clear terms and provisions of the contract, liability of the company did not accrue unless and until the assured had met those conditions by doing the things specifically required of him. The pertinent obligations specified were that the assured would not voluntarily assume liability or interfere in the legal proceedings without written consent of the company previously given, that he would not aid and abet the claimants, and that he would assist and aid, upon request of the company, in securing information and evidence. All these, however, were included in the further general requirement to “at all times render all possible cooperation and assistance.”
 

 Although in the general charge the burden of proof in respect to the performance of these conditions precedent was properly placed upon the plaintiff, the
 
 *231
 
 court had previously erred in the application of the provisions of Section 11420-1, General Code, by requiring the defendant to first produce its evidence, and then refusing to consider defendant’s motion for a directed verdict based upon absence of proof to support plaintiffs’ right to recover. However, the disposition of that question is comparatively unimportant when we come to consider the entire record. The really important question in this case is whether the action or failure and refusal of the assured to act in the respect charged constitutes a violation of the terms of the policy and relieves the insurer from liability.
 

 The record indicates no material dispute as to the facts. But before discussing the facts disclosing the attitude and action of the assured, let us ascertain what, under the law, was required of him by the terms of his contract. The principle applicable has become quite well settled by numerous adjudicated cases wherein were involved contract provisions and conditions in terms substantially the same as those involved in this case. They disclose practical accord in the statement of the principle applicable to the facts presented in the various cases.
 

 The assured is not required to join in the preparation or presentation of a sham defense, but he is required to act with the utmost honesty and good faith. He is required to make a fair and frank disclosure of information demanded by the company to enable it to determine whether there is a genuine defense. He may not condition his cooperation upon the conformance of the insurer to his arbitrary demands for payment or settlement of claims or that it undertake to pay judgments at all events. Such acts constitute a refusal to cooperate.
 
 Coleman
 
 v.
 
 New Amsterdam Casualty Co.,
 
 247 N. Y., 271, 160 N. E., 367;
 
 Rochon
 
 v.
 
 Preferred Acc. Ins. Co. of New York,
 
 114 Conn., 313, 158 A., 815.
 

 A material misrepresentation of the facts to the in
 
 *232
 
 surer respecting an accident is a violation of the terms of the policy and constitutes ground for avoidance of the policy. This was held to constitute non-cooperation.
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Wyer,
 
 60 F. (2d), 856;
 
 Allegretto
 
 v.
 
 Oregon Automobile Ins. Co.,
 
 140 Ore., 538, 13 P. (2d), 647.
 

 The assured cannot arbitrarily or unreasonably decline to assist in making a fair and legitimate defense, or refuse to permit any defense to be made in his name. By so doing, a material condition of his policy is violated and his rights under the policy are forfeited notwithstanding the insurance company could otherwise have protected itself.
 
 Royal Indemnity Co.
 
 v.
 
 Morris,
 
 37 F. (2d), 90.
 

 Similar conduct was held to be ground warranting a judgment for the insurer in the following cases:
 
 American Automobile Ins. Co.
 
 v.
 
 Fidelity & Casualty Co.,
 
 159 Md., 631, 152 A., 523;
 
 Koontz
 
 v.
 
 General Casualty Co. of America,
 
 162 Wash., 77, 297 P., 1081;
 
 Nochon
 
 v.
 
 Preferred Acc. Ins. Co. of New York, supra; Buffalo
 
 v.
 
 United States Fidelity & Guaranty Co.,
 
 84 F. (2d), 833. Other cases have been cited and considered, but we find none out of harmony with the decisions above cited.
 

 In the case of
 
 Coleman
 
 v.
 
 New Amsterdam Casualty Co., supra,
 
 the executive officer of the insured corporation refused to make a statement except upon the condition that the insurer would undertake to pay any judgment recovered against him as well as any against the assured corporation. Thereafter letters written the assured requesting that some officer be sent to verify an answer and later requesting conference on the merits of the claim were ignored. The insurer gave notice that it disclaimed liability since the assured was unwilling to plead in the defense, and judgment for damages was later rendered against the assured. In a review of the ease in which a judgment in favor of the insurance company was affirmed by the Court of Ap
 
 *233
 
 peals of New York, the following statement was made by Chief Justice Cardozo, who rendered the opinion: “The default of the assured was more than sluggishness or indifference, phases of thought and conduct that might be the subject of varying inferences when considered by a jury. It was so avowed and purposed that but one inference is possible. If that was cooperation, one is at a loss to imagine when cooperation could be lacking.
 

 “The plaintiff makes the point that the default should be condoned, since there is no evidence that cooperation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept' its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Cooperation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end,, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent.”
 

 The record in the instant case discloses that at the • time in question Karl Stern, the assured, was accompanied by his guests, Charles T. Luntz and Helen Conoid, who were close personal friends, both of whom were riding with him in the front seat of his Buick automobile. While driving northerly on a four-lane, paved highway, his automobile came into collision with a Ford automobile travelling in a southerly direction driven by Henry Wenhart, in which there was also a passenger, a Miss Discutner. This occurred about two o’clock a. m., and there was then no other traffic in that vicinity. As a result of the collision, Luntz suffered injuries from which he later died, and both Miss Conoid and Miss Discutner suffered severe injuries. Subsequently separate actions were brought
 
 *234
 
 by each of the injured persons. Judgments were recovered against the assured by Helen Conoid and the executors of Luntz. The action brought by Miss Discutner resulted in a verdict in favor of the assured.
 

 Upon receiving notice of the accident, the insurance company promptly proceeded to make an investigation, its representative visiting the scene of the accident and taking statements of various persons in connection therewith, including Helen Conoid, who was a passenger in the car of the assured, the policeman who investigated the accident soon after its occurrence, and others who were on the scene shortly after the collision. These statements all concurred in the fact that the wreckage of both cars was on the east side of the highway, the assured’s car being on the easterly curb and headed in a northerly direction. By these statements it was also disclosed that the skid marks of both cars, as well as broken glass from both cars, were on the east side of the road, which was Stern’s right side of the highway.
 

 The statements made by the insured, as well as his action and attitude thereafter, can scarcely be characterized by any other term than favorable to the claims of his friends and adverse and antagonistic to the insurer. It developed that, in company with one of the plaintiffs and one of plaintiffs’ attorneys in this case, he went to see the prosecuting attorney to prevent the arrest of "Wenhart, the driver of the Ford automobile. Definite promises were made by Stern of payment to Miss Discutner and Miss Conoid, and liability thereby acknowledged. From the beginning he was insistent in his demand upon the company that compensation should be made for the injury to his passengers. He plainly indicated his feeling of independence and freedom from any responsibility in the matter of personal obligation to the company and demanded that the insurance company should compensate his guests whether there was any legal liability or not. In re-
 
 *235
 
 spouse to the direct question of the company’s attorney, who asked the assured whether, assuming that there was no liability on his part, he expected the company to pay, regardless of whether he was negligent, he stated: “Absolutely. The same as if I carried insurance on my house and it burned * * Later the attitude of the insured was clearly indicated by his statement to the representative of the company when he said: “Go ahead, and take me into court * * *. I don’t give a damn who is right and who is wrong. I have insurance to cover my passengers and you are not doing it, and until you do you will get nothing from me.” "When asked whether he told his passengers in his car of that attitude, his reply was: “There was only one to tell. The other is gone.”
 

 Suits having been filed against Stern, the insured, the attorneys for the insurance company sought to prepare and file appropriate answers in the several cas'es based upon the information procured from the various sources above indicated. Several conferences were held during which four different forms of answers were prepared in an effort to satisfy Stern as to the statements contained ther.ein and procure his cooperation in making up an issue upon which it would be possible to go to trial, but without success. He steadfastly refused to sign any of them, though statements therein contained be made on information and belief. Speaking to representatives of the company at one of these conferences', Stern made the statements heretofore quoted and finally offered to bet that they would get beat if they went to trial, stated that the worse they were beat the better he would like it, that he did not have to help the company and they couldn’t make him, and further that they could not make him go to Akron, and that he might not even attend the trial.
 

 These adverse statements, of course, do not in themselves constitute failure of cooperation, but they surely do thus characterize unmistakably his acts and
 
 *236
 
 conduct and fully warranted the conclusion of the attorneys of the company that defense of a suit would he futile with a defendant as client who was' cooperating with the plaintiffs in their suit to secure a judgment against him. It is significant that, after the company refused to proceed with the defense by reason of Stern’s adverse attitude and refusal to cooperate in the preparation of his defense, and he had procured counsel, he signed and verified an answer substantially similar to those he had previously rejected when his aid and cooperation had been insisted upon by the attorneys of the company. By this action he provided compelling, if not conclusive, argument that his purpose in refusing to sign or verify any answer presented to him by the attorneys for the company was to drive the latter into a settlement with his guests, upon which, from the beginning, he had been so insistent. His explanation placed the responsibility for such inconsistency upon his' own personal attorney.
 

 It is particularly significant, too, that in the trial of the action brought by Miss Discutner, the occupant of the Wonhart áutomobile, the owner of which carried no liability insurance, a verdict was rendered against her, while the close personal friends who were guests in Stern’s automobile secured verdicts' and judgments for very substantial amounts.
 

 The
 
 Luntz case
 
 was tried June 26;, 1935, the
 
 Conoid, case
 
 January 14, 1936, and the
 
 Discutner case
 
 January 16, 1936. In the trial of the
 
 Lunts
 
 and
 
 Conoid cases
 
 instituted by his guests, Stern testified that at the time of the collision he was driving along the center line of the road, partly on the wrong side of the road, but when he came to testify in the action brought by Miss Discutner, the passenger in the other automobile, he testified that he was driving on his own right side of the highway.
 

 The general principle announced in the cases above cited is clearly applicable here. Cooperation with the
 
 *237
 
 insurer is one of the conditions of the policy and where there has been a failure to fulfill a condition upon which the obligation is dependent, the obligation ceases. The statement of Justice Cardozo is peculiarly applicable here: “The default of the assured was more than sluggishness or indifference, phases of thought and conduct that might be the subject of varying inferences when considered by a jury. It was so avowed and purposed that but one inference is possible. If this was cooperation, one is at a loss to imagine when cooperation could be lacking.”
 

 When the facts presented in a case are undisputed, whether they constitute a performance or a breach of the contract, is a question of law for the court. Facts which are undisputed in this record constituted a clear and unmistakable breach of the contract in the respects indicated and presented a clear question for the court. A judgment for • the defendant should have been entered.
 

 » It follows that the judgment of the Court of Appeals, insofar as it reversed the judgment of the Court of Common Pleas is affirmed, but must be reversed insofar as it did not render final judgment, and judgment is here rendered for the defendant.
 

 Judgment reversed.
 

 Wbygandt, C. J., Day, Zimmerman, Williams, Myers and Hart, JJ., concur.