STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT, *v.* HOLCOMB, APPELLEE.

(No. 10989—Decided March 30, 1983.)

*Mr. Ellis B. Brannon,* for appellant.
*Mr. A. Wm. Zavarello,* for appellee.

BAIRD, J. After being injured in a collision with an uninsured motorist, defendant, Tammy Holcomb, brought a claim against plaintiff, State Farm Mutual Automobile Insurance Company, under the uninsured motorist provision of the policy she had with plaintiff. After the claim was submitted to arbitration, a substantial award was made to defendant for her injuries. Less than three months after such award, plaintiff instituted the present litigation, seeking a declaratory judgment that the policy was no longer in effect, due to the non-cooperation of the policyholder.

Shortly after the complaint was filed, defendant filed her motion for summary judgment, which was followed almost immediately by a like motion of plaintiff. The material which was submitted in support of the motions consisted of an affidavit of the chairman of the arbitration panel, an affidavit of counsel for the plaintiff, with attached materials, which included the sworn statement of defendant, and the answers to requests for admissions, which had been propounded by plaintiff and answered by defendant.

The policy which was in effect at the time defendant received her injuries contained the following general provision:

"The Insured shall cooperate with the company and, upon its request, attend hearings and trials, assist in effecting settlements, securing and getting evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in

connection with the subject matter of the insurance."

Specifically, with respect to uninsured motorist coverage, the policy provided:

"As soon as practicable the person making claim under coverages C, M, S, T or U shall give to the company written proof of claim, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable."

Though the proof of claim, if any, has not been injected into the case by either party, there is material properly before the court tending to support various claims that plaintiff has propounded regarding the failure of defendant to adhere to these clauses.

First, plaintiff alludes to a letter which it caused to be sent to defendant's attending physician, requesting his report of her injuries. In response, plaintiff received the same letter back, with a handwritten note from defendant's attorney to the effect that there would be no such report until he requested it. The note mentioned further that hospital records were being furnished. There is no evidence that such a report was ever in existence.

Next, it is clear from the evidence that the statute of limitations expired without the defendant having filed suit against the uninsured motorist.

Next, it is also clear from the evidence that defendant failed to appear for a medical examination which had been scheduled by plaintiff with a doctor of its choosing. She apparently had gone to Texas after her notification of such examination, but the record does not disclose any other reason for her failure to appear. Another examination was scheduled and given, however, on February 22, 1982, which was shortly prior to the arbitration hearing.

On March 10, 1982, defendant gave her sworn statement, during which the following exchange took place:

"Q.   Okay. Anything else?

"A.   And the lower part of my back.

"Q.   What lower part of your back?

"A.   Right down toward the top of my hips.

"Q.   You never had any treatment for your back, did you?

"A.   No, sir. * * *"

Further on in her statement, the following exchange took place:

"Q.   All right. No problem.

"I am just trying to get it straight.

"Now, in all that I know about this case I never heard about this back before.

"When did you — is this something you just mentioned or —

"A.   That has been about the last year and a half or so.

"Q.   But you have never been to any doctor for this, right?

"A.   No, sir. * * *"

Thus, there emerges a rather clear implication that plaintiff first learned of a low back complaint on March 10, 1982. This point is buttressed by the affidavit of plaintiff's counsel, as well as the medical report of the plaintiff's doctor, who did not examine defendant's lower back, because he was not asked to do so.

More importantly, this aspect of the evidence in this case shows that the defendant seemingly made a statement, on March 10, 1982, that she had not seen any doctor for her back problems. Moreover, she admits in her responses to requests for admissions that her statement, on March 10, 1982, was that she had not seen a doctor since July 1979. The significance of all this is that, at the arbitration held on March 12, 1982, she produced a report of a Dr. Rosen, relative to an examination he conducted of defendant on March 9, 1982, the day before her sworn statement.

The last complaint raised by plaintiff concerning the failure of cooperation of defendant is that she failed not only to submit to plaintiff the report of Dr. Rosen, but also the reports of a psychologist and an economist, all three of which reports were submitted to the panel at the March 12, 1982 arbitration

proceeding. The first time plaintiff knew of the existence of those reports was when they were produced in support of defendant's claim before the arbitration panel.

The trial court resolved all of these claims in favor of the defendant, in whose favor summary judgment was awarded, while plaintiff's motion was overruled. From that judgment, plaintiff appeals, citing the following assignments of error:

"I. The trial court erred in denying the appellant's motion for summary judgment. The insured breached the 'cooperation clause' of the insurance contract and the cancellation of the insurance contract was the appropriate remedy.

"II. The trial court erred in granting the appellee's motion for summary judgment. Prejudice does not need to be shown in order to cancel an insurance contract for material breach of the 'cooperation clause.'

"III. The trial court erred in denying the appellant's motion to strike the affidavit of an arbitrator. The affidavit was immaterial and impertinent to the declaratory judgment action."

The law in Ohio seems quite clear that a declaratory judgment is an appropriate remedy for an insurance company to pursue, where the conduct of its insured falls short of the standard that is required in cooperation clauses that are typically found in insurance policies; and, in a proper case, the insurer may be relieved of further obligation with respect to the claim regarding which the insured did not cooperate. *Luntz* v. *Stern* (1939), 135 Ohio St. 225 [14 O.O. 62]; and *Travelers Indemnity Co.* v. *Cochrane* (1951), 155 Ohio St. 305 [44 O.O. 302].

While the law in this respect developed before the advent of most of the uninsured motorist practice as we know it today, we are not prepared to say that the adversarial nature of an uninsured motorist claim relieves the insured of her obligation to cooperate, as provided in the policy. It would appear obvious, however, that the failure of cooperation must prejudice the material rights of the insurer before the insured's conduct would warrant cancellation of the policy. To constitute a breach of the cooperation requirement, the failure of cooperation must also be material and substantial. *Western Cas. & Sur. Co.* v. *Barnhart* (C.A. 8, 1963), 312 F. 2d 149.

Reviewing the various claims of plaintiff in that light, we come first to the complaint about defendant not having furnished a copy of a report of her attending physician. Though counsel's method of handling the matter may have been somewhat informal, it is clear that his message was that he had not requested the preparation of such a report, and that one would not be prepared unless he requested it. There is no evidence in this case that such a report existed then or at any other time, and none was introduced at the arbitration hearing. Under such circumstances, the insurer has no right to expect that a report which does not exist should be produced, or that it has the right to order that one be prepared, at least without offering to pay for it. There is no lack of cooperation here.

The next claim of plaintiff is that the failure of defendant to appear at the scheduled medical examination by the insurance company doctor constituted a lack of cooperation. In view of the fact that defendant had apparently moved to Texas, and that a later examination was conducted, without incident, and well in advance of the scheduled arbitration, this conduct falls far short of a showing of substantial non-cooperation.

Another aspect of defendant's conduct which plaintiff claims as a failure of cooperation is her failure to file suit against the uninsured motorist before the expiration of the statute of limitations. Such conduct would not constitute a violation in any respect of the general policy language quoted above, but plaintiff has cited, in this connection, additional policy language which provides that the insured must "* * * do whatever is proper to secure and shall do nothing after loss to

prejudice such rights." The plaintiff further points out that "such rights" refers to the right of the insurance company to recover against the insured motorist, but what the plaintiff does not point out is that the specific language of the policy is that such provision only becomes operative upon payment by the company under the policy. There is no evidence in this case that any payment to any person has been made by plaintiff as a result of the collision in question. There is no lack of cooperation here.

As to plaintiff's claim that defendant's non-cooperation is shown by her failure to provide copies of the three reports submitted to the arbitration panel, it is noted that two of said reports are dated March 10, 1982, while the third is dated March 11, 1982. Since the arbitration was scheduled and held on March 12, 1982, it appears that they were furnished "as soon as practicable," as required by the policy. Except insofar as the report of Dr. Rosen related to the whole issue of failure to disclose back problems, as pointed out below, there is nothing about the furnishing of the three reports that constitutes a failure to cooperate.

The next claim to be considered relates to the failure of defendant to inform plaintiff of her back problems, and her inaccurate responses provided during the course of the March 10, 1982 sworn statement. The defendant did, under the language of the policy, have a duty to inform plaintiff as to the nature and extent of her injuries. This she did not do until two days before the arbitration, at which time she also provided inaccurate information as to her seeing a doctor. Either of these, standing alone, might be explainable, but together they are subject to being construed as constituting a conscious effort to mislead plaintiff as to the lack of any medical problems beyond those of her two knees.

Further, there was evidence that back problems were argued as a basis for recovery before the arbitration panel. There was also evidence that plaintiff would have had its own doctor examine defendant for low back problems if it had known of the existence of same. Thus, there is evidence that defendant failed to cooperate in a manner required by the policy, as well as there being some evidence that this failure was both material and prejudicial to the plaintiff.

On the other side of the coin, it can certainly be argued that the failure to inform was unsubstantial and not material, inasmuch as the knee problems appeared to be much more serious than those of the back, even to the extent that they may require future surgery. Further, it can be argued that the plaintiff's own failure to ask for a continuance of the arbitration due to surprise and/or its inability to get a continuance because of past continuances granted at its request, rendered any prejudice to be solely of plaintiff's own making.

Since each party has filed a summary judgment action, and since each party is entitled to have the evidence construed most strongly in her or its favor (Civ. R. 56[C]), it is not possible to say that reasonable minds can come to but one conclusion on the issues of materiality and prejudice. Accordingly, it is not possible to resolve this case by summary judgment.

The first assignment of error is overruled. The second assignment of error is sustained as to the first sentence, but overruled as to the second sentence. Since the matters that took place before and during the arbitration hearing could bear on the issues of both materiality and prejudice, the third assignment of error is overruled. The judgment appealed from is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

GEORGE, J., concurs.

MAHONEY, P.J., dissents.

MAHONEY, P.J., dissenting. I dissent. It appears to me that the appellant insurance company is dissatisfied with the arbitrators' award and is now using this declaratory judgment action to circumvent and collaterally attack the award without "appealing" the decision as provided in R.C. 2711.10, 2711.11 and 2711.13. Appellant agreed to proceed with arbitration and did so without a reservation of rights under the policy.

Appellant seeks to disguise as a lack of cooperation, various actions of appellee which would have been ruled upon in some degree by the arbitrators in the admission of evidence. I believe appellant's claims of misleading statements resulting in surprise as well as tardy medical reports were matters the arbitrators could have cured by continuances or otherwise. It must be kept in mind that at the point of arbitration, the parties are adversaries. Appellant should not be permitted to make up for its shortcomings in conducting the arbitration case by now claiming a lack of cooperation under the policy.

In my opinion, there is not now a justiciable controversy between the parties upon which the court can make a declaratory judgment.