WELLER, Appellant,

v.

FARRIS; Erie Insurance Company, Appellee.

[Cite as *Weller v. Farris* (1998), 125 Ohio App.3d 270.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16487.

Decided Jan. 9, 1998.

*Sigurd R. Peterson, Jr.,* for appellant.

*Gordon D. Arnold* and *Kevin C. Connell,* for appellee.

WOLFF, Judge.

Diana L. Weller appeals from a judgment of the Montgomery County Court of Common Pleas, which awarded her $10,000 in damages in a personal injury lawsuit against Cynthia Farris. Prior to awarding damages against Farris, the trial court had granted summary judgment on the intervenor's complaint filed by Erie Insurance Group ("Erie"), Farris's automobile liability insurer and an intervenor in Weller's action against Farris.

On October 14, 1993, Weller and Farris were involved in an automobile collision in the Meijer's parking lot on State Route 741 in Montgomery County, Ohio. Officer Huwer of the Miami Township Police Department witnessed the accident and completed a traffic crash report. On January 27, 1995, Weller filed a

complaint alleging that Farris's negligent failure to yield had proximately caused her to suffer personal injuries and to incur medical expenses and lost wages.

At the time of the collision, Farris was covered by an automobile insurance contract with Erie. The contract included a cooperation clause, which placed Farris under a duty to cooperate with and assist Erie in investigating and resolving any claims arising from an accident or loss. Attorney James M. Thorson notified Erie that he had undertaken to represent Weller in her claim for personal injuries arising from the accident. David Morgan, an Erie claims representative, sent Farris a letter requesting that she complete a "statement of accident." On April 12, 1994, Farris completed the statement, wrote a letter to Morgan, and drew a diagram of the accident scene. When Morgan received notice that Weller had filed a lawsuit against Farris, he turned the claim over to Doug Fox, an Erie claims supervisor.

On February 14, 1995, Fox contacted attorney Jeffrey A. Hazlet about representing Farris and sent him the file. Hazlet sent a letter to Farris's residence at 5106 East Whiteway Drive, Tampa, Florida. The letter informed Farris that Hazlet would represent her, requested that she telephone him, and included a copy of the answer to Weller's complaint. On February 16, 1996, Hazlet filed the answer, which denied Farris's liability for the accident. Without having heard from Farris, Hazlet sent another letter on March 5, 1995, instructing her to complete a set of interrogatories prepared by Weller. Hazlet sent two more letters, dated March 29 and April 26, 1995, again requesting Farris to complete the interrogatories and to call him. A letter dated May 18, 1995 asked for Farris's telephone number and stated that if she continued to be unresponsive, Hazlet would withdraw from representation and her insurance coverage could be adversely affected. In a letter dated May 23, 1995, Hazlet again informed Farris of his plan to withdraw from representation and indicated that her unlisted telephone number had prevented him from calling her. Hazlet sent Farris yet another letter on June 27, 1995.

Due to Hazlet's many unsuccessful attempts to contact Farris, Fox hired investigator Jerry Hart to locate her. Hart found Farris's then-current address and gave the information to Fox, who forwarded it to Hazlet. On August 17, 1995, Farris telephoned Hazlet and informed him of her new address at 601 Wonderland Road, Tampa, Florida. On August 21, 1995, Hazlet sent a letter and interrogatories to that address. He asked her to complete the interrogatories and to write a narrative of the accident. These materials were returned and marked as "no such street in city delivery." Although Hazlet and Farris had scheduled a telephone conference for August 22, 1995, Farris did not make the collect call as instructed. Hazlet filed a motion to withdraw from representation on August 30, 1995. This motion was granted by the trial court on October 2,

1995. On October 12, 1995, Fox sent a letter to two Tampa addresses (5106 E. Whiteway Drive and 10740 56th Street, Apt. 167) to inform Farris that Erie had terminated defense coverage due to her lack of cooperation. Hazlet sent Farris a letter dated October 13, 1995 to notify her of his withdrawal from representation and to inform her that she would have thirty days from October 2, 1995 to obtain other counsel or to contact the court.

On January 16, 1996, Erie filed a motion to intervene in the lawsuit to assert an intervenor's complaint for a declaratory judgment that "there is no liability insurance coverage or duty to defend owed" by Erie to Farris because Farris had breached her contractual duty to cooperate in Erie's investigation and defense of Weller's claim. The trial court sustained Erie's motion to intervene on March 29, 1996. On June 17, 1996, Erie filed a motion for summary judgment on its intervenor's complaint. The trial court granted summary judgment on September 24, 1996.

Weller raises one assignment of error on appeal:

"The trial court erred in granting third–party plaintiff Erie's motion for summary judgment that it did not have to indemnify its insured against plaintiff's claim when there was no prejudice from its insured's alleged failure to cooperate."

Weller contends that the trial court erred in granting summary judgment in Erie's favor because Erie had not established that Farris's lack of cooperation caused it to suffer prejudice.

On review of the trial court's summary judgment ruling, we apply the standards set forth in Civ.R. 56 for granting summary judgment. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342–1343; *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26. Civ.R. 56(C) provides:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." ·

In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274, the Ohio Supreme Court explained Civ.R. 56(C) in terms of a three-prong test:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

If the movant satisfies the burden of proof under Civ.R. 56(C), the nonmovant can avoid summary judgment by producing evidence of "specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 101, 522 N.E.2d 489, 491–492, paragraph seven of the syllabus. The nonmovant cannot make this showing by merely relying on allegations or denials contained in his pleadings.

When a contract of insurance includes a cooperation clause, an insured's cooperation in defending an action brought against him is a material condition of the insurance policy and a condition precedent to the insurer's duty to provide liability coverage. *Conold v. Stern* (1941), 138 Ohio St. 352, 359, 20 O.O. 449, 452–453, 35 N.E.2d 133, 137–138. Because a party injured by an insured stands in the insured's position regarding rights against the insurer, the injured party is subject to the lack-of-cooperation defense when it is available to the insurer. *Luntz v. Stern* (1939), 135 Ohio St. 225, 230, 14 O.O. 62, 64–65, 20 N.E.2d 241, 244; *Conold,* 138 Ohio St. at 359, 20 O.O. at 452–453, 35 N.E.2d at 137–138. To avoid liability to the injured party, the insurer must establish that the insured's failure to cooperate prejudiced its rights and that the failure to cooperate was material and substantial. *Templin v. Grange Mut. Cas. Co.* (1992), 81 Ohio App.3d 572, 576, 611 N.E.2d 944, 946, citing *State Farm Mut. Auto. Ins. Co. v. Holcomb* (1983), 9 Ohio App.3d 79, 81, 9 OBR 99, 101–102, 458 N.E.2d 441, 444–445.

"A controversy between an insurer and its insured as to its liability or duty to defend is properly determinable by a declaratory judgment action." *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 381, 15 OBR 497, 498, 474 N.E.2d 320, 322. In such an action, issues of fact "may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." R.C. 2721.10. The standard for determining whether an issue should be tried by a court or by a jury is set forth in R.C. 2311.04:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

In *Travelers Indemn. Co. v. Cochrane* (1951), 155 Ohio St. 305, 315, 44 O.O. 302, 307, 98 N.E.2d 840, 845, the Ohio Supreme Court concluded that the insurer's declaratory judgment action, which sought the determination of its obligations to the insured and the avoidance and cancellation of the policy, was properly tried by the court rather than by a jury. Because Travelers sought recovery of neither a money judgment nor specific real or personal property, the factual issue of whether the insured had breached the cooperation clause was properly tried by the court. "It was further held [in *Cochrane*] to be the province of the court to ascertain the facts necessary to construe the contract and determine the obligations of the insurer." *Erie*, 15 Ohio St.3d at 382, 15 OBR at 499, 474 N.E.2d at 322. Following *Cochrane*, the *Erie* court held:

"[A] declaratory judgment action filed by an insurer against an insured, the purpose of which is to construe an insurance policy and determine the insurer's obligations to the insured, and is not for the purpose of determining liability in an action for the recovery of money, is properly triable to the court." *Id.* at 383, 15 OBR at 499, 474 N.E.2d at 323.

As in *Cochrane* and *Erie*, the complaint for declaratory judgment in this case, had summary judgment been denied, would have been properly tried to the court. Erie sought the determination of its obligations to Farris and the avoidance and cancellation of the insurance contract rather than a money judgment or specific property. Pursuant to R.C. 2311.04, the factual issues of Farris's lack of cooperation and the prejudice suffered by Erie would have been properly tried to the court.

The fact of Farris's failure to cooperate with Erie is beyond reasonable dispute. Having determined that the issue of prejudice is triable to the court, we must now determine whether Erie met the standards for summary judgment regarding the element of prejudice so as to have been entitled to summary judgment. Whether the insured breached the cooperation clause is generally determined "in view of the facts and circumstances in each case"; however, the issue may be determined by the court as a matter of law "when a case presents undisputed facts." *Gabor v. State Farm Mut. Auto. Ins. Co.* (1990), 66 Ohio App.3d 141, 144, 583 N.E.2d 1041, 1043. Courts of other states have similarly held that prejudice resulting from an insured's failure to cooperate is an issue of fact. *Anderson v. Kemper* (1983), 128 Mich.App. 249, 253, 340 N.W.2d 87, 90; *Ramos v. Northwestern Mut. Ins. Co.* (Fla.1976), 336 So.2d 71, 75.

In reviewing Ohio and foreign states' case law, we have not discovered a clear, generally accepted standard for establishing the element of prejudice. Courts discussing this element generally speak in terms of the insurer's inability to

properly defend the action. In *Thomas v. Quercioli* (May 11, 1995), Cuyahoga App. No. 67998, unreported, 1995 WL 277117, the appellate court stated:

"It is clear that Nationwide could not properly defend Quercioli without her cooperation. Therefore, Nationwide would have suffered material and substantial prejudice if it was forced to defend Quercioli without her cooperation."

Prejudice has been described as involving material injury to the insurer's ability to contest the merits of the case, *Anderson,* 128 Mich.App. at 253–254, 340 N.W.2d at 90, or serious impairment in investigating the claim or defending the merits of the case. *King v. Fed. Ins. Co.* (D.Kan.1992), 788 F.Supp. 506, 506, affirmed (C.A. 10, 1993), 996 F.2d 311; *Darcy v. Hartford Ins. Co.* (1990), 407 Mass. 481, 490, 554 N.E.2d 28, 34. Cf. *Boone v. Lowry* (1983), 8 Kan.App.2d 293, 302, 657 P.2d 64, 72 (requiring the insurer to show "at the very least that if the cooperation clause had not been breached there was a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor"). Except for the *Boone* case, which we believe presents an unreasonably stringent test, these cases suggest that the determination of prejudice is not susceptible of bright-line analysis.

In our opinion, Erie did not establish that reasonable minds could only have concluded that it suffered prejudice due to Farris's lack of cooperation. As permitted by Civ.R. 56(C), we have considered Erie's motion for summary judgment, the exhibits attached thereto, the transcript of Fox's deposition, and its attached exhibits in analyzing whether Erie had met the standards for obtaining summary judgment. Erie's motion described several instances of Farris's neglect and stated the following in regard to prejudice:

"Obviously, Erie cannot present any meaningful defenses to liability. Ms. Farris is a material witness to the accident. Because Ms. Farris has not communicated with her attorney, it is not known if other witnesses supportive of the defense even exist. Ms. Farris' breach means Erie will not be able to rebut the plaintiff's presentation of evidence.

"Further, Ms. Farris' testimony is essential to any meaningful defense to plaintiff's claimed damages. Ms. Farris' testimony as to her observations of plaintiff after the accident or as to any conversations with plaintiff is crucial to rebut plaintiff's claims of the nature and extent of any injuries she may have suffered. The defense of plaintiff's claimed damages is also prejudiced by Ms. Farris' failure to provide the names of any other witnesses who may be able to rebut plaintiff's claims. Erie simply cannot rebut plaintiff's claims without Ms. Farris' cooperation."

Hazlet's affidavit, which was attached to Erie's motion for summary judgment, stated that he had believed "that liability and damages were contested issues"

and that "Ms. Farris's testimony was necessary to properly defend the plaintiff's claims on both liability and damages." Fox testified at his deposition that Erie had needed Farris's assistance because her written statements disclaiming sole responsibility for the accident would have been helpful in litigating Weller's claim. In completing the statement of accident form, Farris expressed her belief that Weller had been responsible for the accident and described the accident as follows:

"I stopped at the stop sign and looked to my left and right. No one on either side or in front of me. I began turning left into the center of the lane and another car came from across Meijers parking lot and we colided [sic] head on. She was not coming from in front of the street I was on, but she did come from a diagonal position. As I was turning left I saw her coming toward me and put on my brakes and started to stop the truck. She kept on coming until we colided [sic]. I couldn't do anything, it was too late. I just don't feel she was paying attention. That's why I was upset when I got out of the truck."

In her letter to Morgan, Farris explained that "we were all fine" immediately after the accident and that Officer Huwer had told her, "[T]he other woman and I only had to take care of our own vehicles." Farris also stated, "I in my heart feel yes, I may have crossed double yellow lines during my turn. So I should get a ticket, but to be blamed for what happened that day, I feel is wrong."

Pursuant to Civ.R. 56(E), we have also considered whether Weller came forward with, or otherwise pointed out, evidence of specific facts showing that a genuine issue regarding the element of prejudice remained for trial. Weller filed a reply in opposition to Erie's motion for summary judgment and claimed that the record was devoid of evidence of prejudice. She suggested that Farris's absence would be immaterial because Officer Huwer, "an independent and experienced eyewitness," could inform Erie of any other eyewitnesses and could testify as to the facts of the accident and any observable injuries suffered by Weller. Weller also claimed that Erie could introduce into evidence, and that she would waive any hearsay objection to, Farris's statement of accident and letter to Morgan. According to Weller, these written statements provided adequate evidence for defending against Weller's allegations that Farris was solely responsible for the accident.

In our opinion, the question of whether Erie suffered prejudice should not have been determined on summary judgment. Although Erie's evidence suggested that Farris's testimony was needed to present a contributory negligence defense, Weller's reply argued persuasively, with reference to the evidence, that Erie may have been able to present such a defense even in Farris's absence. The fact that Weller offered to waive any hearsay objections to the admission of Farris's written statements is particularly relevant to our conclusion that the element of

prejudice was not undisputed. The trial court should have taken testimony from Weller, Officer Huwer, and Erie claims adjusters before deciding that Erie had indeed suffered prejudice. Because a genuine issue of material fact remained on the element of prejudice, we conclude that the trial court should have denied Erie's motion for summary judgment and erred in not doing so.

The assignment of error is sustained.

The judgment of the trial court will be reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.