OPINION
This is an appeal of a decision of the Fayette County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, FT Mortgage Companies, and third party defendant-appellee, Lightning Rod Mutual Insurance Company. We affirm in part, reverse in part, and remand the matter to the trial court for further proceedings.
Defendant-appellant, Marlene Williams, and her now deceased husband, Denzel Williams, were the owners of a residence located at 2427 Bogus Road, in Washington Court House, Ohio. The property was encumbered by a $75,600 mortgage held by FT Mortgage Companies ("FT"). On March 3, 1997, the home and its contents were destroyed by a fire that was intentionally set.
The home was insured for $76,000, and the contents insured for an additional amount, under a policy issued by Lightning Rod Mutual Insurance Company ("LRM"). Williams immediately filed a claim under the policy. Sandra J. Beckey, a self-employed insurance adjuster who routinely is hired by LRM to represent them in their handling of claims, worked on Williams' case. When Williams originally talked to Beckey, Williams told her where she was on the night of the fire and provided information about the person whom she suspected had caused the fire to her home. Williams also filled out several claim forms in which she listed personal property that had been destroyed by the fire and estimated the value of this property.
LRM also asked Williams to submit to questioning under oath, pursuant to the terms of the policy. Williams refused to appear for the examination, and continually refused to be examined under oath during the course of this proceeding, citing her Fifth Amendment right against self-incrimination. Williams stated that she was not involved in the arson, and refused to answer any further questions. LRM also asked that Williams provide information about her mortgage, bank accounts and credit cards. Williams failed to supply this information as well, alleging that all of the records had been destroyed in the fire. Finally, Williams failed to send LRM a signed and sworn proof of loss.
Beginning in April 1997, Williams failed to make the monthly mortgage payments on the home as they became due. In August 1997, FT filed a foreclosure action against Williams. Williams then filed a third party complaint against LRM, alleging that LRM had negligently adjusted her insurance claim. Williams alleged that it was LRM's failure to timely pay the claim which caused her to default on the mortgage. In April 1998, LRM paid FT $76,000, the insurance policy limit on the home, pursuant to the insurance contract. The insurance contract required LRM to pay the mortgagee, even if Williams were involved in causing the fire. Williams claimed to have no knowledge of LRM's payment until June 1998. After FT applied the $76,000 to William's mortgage, there remained $10,612.32 due on the note, a result of accrued interest from March 1997, plus advances.
LRM filed a motion for summary judgment, contending that it had paid the policy limits to FT, and had no obligation to pay any sum to Williams as she had failed to meet her obligation under the insurance contract to cooperate with FT's investigation of the fire. The trial court granted LRM's motion and dismissed Williams' third party complaint. In October 1999, FT filed a motion for summary judgment asserting that Williams was in default of the mortgage, that it had received $76,000 under the LRM policy, that although this money was applied to the mortgage account a deficiency remained, and that it was therefore entitled to judgment. The trial court granted the motion and entered judgment against Williams in favor of FT. The trial court ordered that Williams' property be sold to cover the deficiency. Williams appeals, raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE LIGHTNING ROD MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, DISMISSING APPELLANT WILLIAMS' THIRD-PARTY COMPLAINT AGAINST LIGHTNING ROD MUTUAL INSURANCE COMPANY FOR NEGLIGENT ADJUSTMENT OF HER FIRE CLAIM ARISING OUT OF THE DESTRUCTION OF HER RESIDENCE AND CONTENTS.
 Summary judgment is appropriate when: "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party has satisfied its initial burden, the nonmoving party then has the reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Id.; Civ.R. 56(E). The nonmoving party's response must set forth specific facts showing that there is a genuine triable issue, and summary judgment is proper if the party opposing summary judgment fails to set forth such facts. Dresher at 293.
An appellate court conducts a de novo review of a trial court's grant of summary judgment. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720. The trial court's decision is reviewed independently without deference to its determination. Id. Keeping this standard of review in mind, we now turn to the specific arguments raised by Williams.
Williams contends that LRM had agreed to act as an agent for the sheriff of Fayette County and had "commenced an investigation with the sheriff's office of Fayette County, and had agreed to secretly work together and share the results of their investigation." Williams maintains that LRM's alleged complicity with the sheriff's office justified her noncompliance with the contractual requirement that she submit a statement under oath, or at least raises a factual question as to whether her failure to comply with the contract was willful.
We initially note that Williams has failed to point out definitive evidence in the record which indicates that LRM and the Fayette County Sheriff's Office entered into any sort of secret agreement, or that LRM acted in any way "as an investigative arm of a law enforcement agency[.]" LRM employed Beckey to review Williams' case. Beckey reviewed the sheriff's files regarding the suspected arson and Beckey submitted questions about the cir cumstances surrounding the fire to Williams.
As an insurer, LRM was certainly allowed to investigate the events connected to the fire that had damaged the property they insured. Moreover, pursuant to R.C. 3737.16, an insurer who has reason to suspect that a fire loss is attributable to arson is required to furnish all relevant material acquired during the course of its investigation to the fire marshal, prosecuting attorney, and other local law enforcement officials. Thus, LRM would have been compelled by statute to provide any evidence of arson to the appropriate law enforcement officials.
In order to protect against false claims, insurers frequently include clauses in insurance policies which mandate cooperation by the insured in investigating a claim. Gabor v. State Farm Mutual Automobile InsuranceCo. (1990), 66 Ohio App.3d 141, 143. LRM's "Farm Property Coverage Form" contains such a clause which states, in pertinent part as follows:
3. Duties in the event of loss or damage.
 a. You must see that the following are done in the event of loss or damage to covered property:
* * *
 8) Cooperate with us in the investigation or settlement of the claim.
 b. We may examine any "insured" under oath, while not in the presence of any other insured, and at such times as may reasonably be required, about any matter relating to this insurance or the claim, including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.
 When cooperation is a policy condition, and an insured fails to comply, the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate. State Farm Mutual Automobile Insurance Co. v. Holcomb (1983), 9 Ohio App.3d 79. When an insurer demands information, the policyholder is "required to make a fair and frank disclosure of information demanded by the company." Gabor at 144, quoting Luntz v. Stern_ (1939), 135 Ohio St. 225, 231.
Whether an insured has violated the cooperation clause of a policy is a question to be determined in view of the facts and circumstances of each case. Id., citing Northedge Laboratory Co. v. Cincinnati Insurance Co. (Mar. 3, 1987), Montgomery App. No. CA 10090, unreported. Generally, this issue is to be determined by the fact-finder. Gabor at 144; Costav. Cox (1958), 168 Ohio St. 379, paragraph two of the syllabus. However, a court may decide this issue as a matter of law when the facts are not in dispute. Gabor at 144, citing Luntz, 135 Ohio St. at 237. See, also,Travelers Indemn. Co. v. Cochrane (1957), 155 Ohio St. 305.
Lack of cooperation may relieve an insurer of an obligation on a claim when the insured's failure to cooperate substantially prejudices a material right of the insurer. Gabor at 144; Holcomb,9 Ohio App.3d at 81. When an insurer raises arson as an affirmative defense to liability, there are strong public policy considerations supporting the insurer's right to question the insured under oath. The insurer must have access to information held by the insured when making coverage decisions. The refusal to provide a statement under oath constitutes asubstantial and material breach of the insurance agreement. See Gabor
at 145.
It is undisputed that Williams had a duty to cooperate with the investigation under the terms of the policy. This included providing a statement under oath. It is also undisputed that she refused to comply with this contract term.
Williams insists that her invocation of her Fifth Amendment right against self-incrimination relieves her of the duty to answer under oath questions posed by LRM. We note that this is an issue of first impression in Ohio. Williams never submitted a proof of loss as required by LRM, and under such circumstances we agree that she may not now use the Fifth Amendment privilege "as a sword against her fire insurer."Harary v. Allstate Ins. Co. (E.D.N.Y. 1997), 988 F. Supp. 93, 103.
We hold that LRM was substantially prejudiced by Williams' failure to cooperate and therefore LRM had no obligation to pay Williams' claim for her personal losses of the contents of her home. The first assignment of error is overruled insofar as it pertains to LRM's coverage of the contents of Williams' home.
Williams also alleges that LRM's "deliberate, willful and untimely failure" to pay the proceeds of the fire insurance policy to FT resulted in an accumulation of interest charged to her, and such action constituted negligence. Instead of using the term "negligence" in this contract case, we will discuss this issue in terms of breach of contract. As we will discuss in further detail below, we agree with Williams' contention that it was not appropriate to award summary judgment to LRM as to this part of her claim. The first assignment of error is overruled in part and sustained in part for the reasons outlined below.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF/APPELLEE FT MORTGAGE AND ORDERING FORECLOSURE AND SALE OF APPELLANT'S LAND FOR ACCUMULATED INTEREST.
 In her second assignment of error, Williams contends that FT's acceptance of the insurance proceeds from LRM, without her knowledge, precludes FT from foreclosing on the mortgage. Although we disagree with Williams' argument that FT was precluded from foreclosing on the mortgage, there appears to be a significant factual question about whether Williams should be held responsible for satisfying the full amount of interest that accrued upon the mortgage.
The fire occurred on March 3, 1997. Williams reported the fire to LRM just a few days later. Williams failed to make payments on the mortgage beginning with the April 1997 payment. FT filed a complaint in foreclosure on August 20, 1997. In June 1998, LRM paid FT the policy limit of $76,000, and FT applied this amount to the mortgage balance. In the fifteen months between the fire and LRM `s payment to FT, $10,612.32 of interest accrued.
The LRM policy states that
 [i]f we pay the mortgage holder for any loss or damage and deny payment to [Williams] because of [Williams'] acts or because [Williams] failed to comply with the terms of this Coverage Form:
* * *
 2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
 Accordingly, FT had both a contractual right, and an equitable right as the lienholder, to the proceeds of the insurance policy.
FT required Williams to obtain property insurance as a condition of providing a mortgage to Williams. Uniform Covenant No. 5 of the mortgage contract states in pertinent part, "Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire * * *." However, under the insurance contract, LRM was required to pay the claim of the insured mortgagee even in the event that the insured caused the destruction of the property. This obligation was completely independent from Williams' obligation to make mortgage payments or to cooperate with LRM. Therefore, we find that Williams' failure to comply with all of the terms of the insurance contract does not extinguish LRM's obligation to pay FT in a manner that is in accordance with the contract terms.
The LRM policy states, in General Conditions, paragraph 4(b)-(d), the following:
Mortgage Holders
 b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
 The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.
 If we deny [Williams'] claim because of [Williams'] acts or because [Williams has] failed to comply with the terms of this Coverage Form, the mortgage holder will still have the right to receive loss payment if the mortgage holder:
 1) Pays any premium due under this Coverage Form at [LRM's] request if [Williams has] failed to do so;
 2) Submits a signed, sworn statement of loss within 60 days after receiving notice from [LRM] of [Williams'] failure to do so; and
 3) Has notified [LRM] of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.
 All of the terms of this Coverage Form will then apply directly to the mortgage holder.
 There is almost no evidence in the record of how LRM and FT complied with the contract terms in paragraph 4(d) cited above. Williams did not send LRM a sworn proof of loss. According to paragraph 4(d)(2), LRM was obligated to notify FT of Williams' failure to send a proof of loss. Within sixty days after receiving such notice, FT was required to submit a signed, sworn statement of loss to LRM. After this was done, the terms of the coverage form were to apply directly to the mortgage holder.
Having decided that Williams' breach of contract does not eliminate LRM's obligation under the insurance contract to pay FT, we note that LRM and FT have presented no facts in their motions for summary judgment to show that they complied with the terms of the contract. Therefore, the moving parties have not satisfied their initial burdens and summary judgment should be denied. The factual question that remains to be determined is whether Williams, LRM, and FT complied with the above provisions of the insurance policy in a reasonable and timely manner. The underlying issue is whether the fifteen month delay between the fire and LRM's payment to FT was reasonable, and, if not, which party or parties should be held responsible for causing such delay.
Therefore, there is a question of fact as to what part of the $10,612.32 interest that accrued in this case was due the failure of Williams, LRM, or FT to comply with the contract terms in a timely and reasonable fashion. LRM and FT have a burden to show that they complied with the terms of the insurance policy. Because there is a factual question in dispute, it is not appropriate to grant summary judgment to LRM or FT in regard to the amount of interest owed on the mortgage balance. The second assignment of error is sustained.
Judgment affirmed in part and reversed in part.
POWELL, J., concurs.
WALSH, J., dissents.