Lauriat, J.
American Commercial Finance Corporation (“American”), brought this action against Seneca Insurance Company (“Seneca”), its insurer, to recover damages arising from Seneca’s refusal to pay costs which American incurred after a fire in a building on which American held the mortgage. Both parties have now moved for summary judgment on certain of American’s claims.
After hearing, and for the reasons stated below, American’s motion for partial summary judgment is allowed in part and denied in part, and Seneca’s partial motion for summary judgment is also allowed in part and denied in part.
BACKGROUND
The following undisputed facts are taken from the summary judgment record. On November 25, 2000, a fire broke out at the insured property, resulting in significant damage. The properly was insured by Seneca under a policy that read in part “(w]e will pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any covered cause of loss.” Both parties agree that fire was a “covered cause of loss” under the policy and that the property destroyed was “covered property.”
At issue in this case is a section of the insurance policy entitled “Loss Conditions, Duties In the Event of Loss or Damage," which instructed the insured to “(t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [the] expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.” In accordance with this clause, American employed a guard service to protect the property from further damage for a period of several months after the fire. The total cost of this service was $79,350.50.[1]
After the fire, the Hudson Fire Department billed American a service charge of $3,934 for “fire watch” expenses initiated prior to the fire, when the building’s sprinkler system stopped working. The insurance policy states that “(w]hen the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department charges: (1) Assumed by contract or agreement prior to loss; or (2) Required by local ordinance.” In accordance with this section, Seneca reimbursed American for $1,000 of the $3,934 owed to the fire department. It declined to reimburse American for any of its other security costs.
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact on any relevant issue raised by the pleadings and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995). The moving party bears the burden of showing that they are entitled to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). In ruling on the motion, the court must consider the evidence in the light most favorable to the opposing party. Beal v. Bd. of Selectmen of Hingham, 419 Mass. 535, 539 (1995).
In this case, both parties agree that the facts are undisputed. The only issue is whether the insurance policy should be read to cover both the fees paid by American for a security guard to protect the insured property, and the fire department service charges that exceeded $1,000.
The interpretation of an insurance policy is a matter of law, which may be appropriately decided by summary judgment. McNeill v. Metro. Prop. & Liab. Ins. Co., 420 Mass. 587, 589 (1995). “Likewise, the application of [insurance] policy language to known facts presents a question of law for the court.” Kelleher v. Am, Mut. Ins. Co. of Boston, 32 Mass.App.Ct. 501, 503 (1992), citing Sherman v. Employer’s Liab. Assurance Co., 343 Mass. 354, 356 (1961).
I. Interpretation of Policy Language Regarding “Loss Conditions”
Seneca asserts that while the insurance policy requires that American take protective measures after a fire to protect the insured property from future harm, the policy does not cover the cost of doing so. American claims that the policy clearly covers this cost, and that even if the language is ambiguous, it should be interpreted in favor of American as the insured.
The “Loss Conditions” provision does not state explicitly whether or not the insurance policy covers expenses relating to the protective measures that it requires the insured to take after property is damaged. American reasons that the language in the section requiring the insured to “(t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the *498 settlement of the claim” implies that the policy covers these costs and that the insurer will reimburse the insured when the claim is settled. Seneca, however, contends that this provision, when read in its entirely, clearly does not cover the costs of mitigating damages.[2] The purpose of this clause, according to Seneca, is to require the insured to protect damaged property from any further harm, and to create a record so that the insurer can determine if any additional harm resulted from a covered cause of loss, or from the insured’s negligence in failing to protect the already damaged property. In that case, the more recent damage would not be covered.
“[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation [of a contract provision] contraiy to the other.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998), citing Lumbermens Mut. Cas Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). However, “[w]here there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it.” Makrigiannis v. Nintendo of Am,, 442 Mass. 675, 681 (2004), citing Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993).
In this case, the insured’s interpretation of the policy language is clearly rational. The provision begins with the requirement that the insured protect the property from further damage and keep a record of expenses for consideration in the settlement in the claim. These statements taken alone imply that the insurer will reimburse the insured for these costs when they are considered at settlement. The next sentence, “This will not increase the Limit of Insurance,” reinforces this interpretation. This sentence suggests that the required protection costs will only be covered if they do not increase the settlement beyond the “Limit of Insurance.”[3] The final sentence, “However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss” appears to be unrelated to whether the insurer will reimburse the insured for the costs of the required protection. This statement only clarifies that the policy will not cover additional causes of loss just because the insured takes additional required protective measures. This court therefore adopts American’s interpretation of the policy language at issue.
In deciding whether an expense is covered by an insurance policy “it may [also] be appropriate to consider what a policyholder reasonably should expect his coverage to be under the circumstances.” Home Indem, Ins. Co. v. Merch, Distrib., Inc., 396 Mass. 103, 107 (1985), citing Bond Bros. v. Robinson, 393 Mass. 546, 551 (1984). The court looks at whether the insured’s expectation was objectively reasonable based on the policy’s “structure, content, manner of printing of the policy, or methods and practices of marketing.” County of Barnstable v. Am, Fin. Corp., 51 Mass.App.Ct. 213, 218 (2001), citing Jefferson Ins. Co. of N.Y v. Holyoke, 23 Mass.App.Ct. 472, 477 (1987).
The insured’s duty to protect property from further harm is discussed in a section of the insurance policy titled “Loss Conditions, Duties in Event of Loss or Damage.” The expenses related to this requirement are not listed or described anywhere else in the policy. Seneca contends that because the duty to protect the property from further damage was not listed under “coverage” or under “additional coverage,” the structure of the policy suggests that it is not a covered cost. American reasons that the costs of fulfilling the duty imposed by the policy should be covered because the expense was not listed under “exclusions and limitations.” Neither argument is persuasive.
In deciding whether the policy covers expenses incurred by the insured while fulfilling duties imposed by the policy, it is instructive to compare this provision to another section that imposes a duty on the insured, also listed under the “Loss Conditions, Duties in Event of Loss or Damage” section of the policy: the cooperation clause. Section E(3)(8) of the policy at issue requires the insured to fulfill an obligation by “cooperatfing] with us in the investigation or settlement of the claim.” This duty imposed on the insured is a routine provision of insurance contracts. However, it is generally accepted that “[t]he insured ordinarily does not have to satisfy the obligation to assist and to cooperate with the insurer at his or her own expense.” Holmes, Holmes’ Appleman on Insurance, §138.2 (2d ed. 2003). See also State Farm Mut Auto. Ins. Co. v. Holcomb, 458 N.E.2d 441, 445 (Oh. 1983) (insurer could not order insured to have a report prepared by physician unless insurer offered to pay for it); Auto-Owners Ins. Co. v. Rodgers, 360 So.2d 716, 718 (Ala. 1978) (insured had not breached cooperation clause by failing to appear at appointment because insurer had not offered to pay his travel expenses or any lost wages). The provision at issue here is similar to the cooperation clause because it is listed under the same section of the policy and imposes a duty on the insured. A reasonable policyholder would therefore likely believe the costs of protecting his insured property after a fire was covered by this section of the policy.
II. Policy Coverage of Fire Department Services Charges
According to the Complaint, the Hudson fire department fees totaling $3,934 corresponded to “fire watch services provided directly by the Hudson Fire Department.” Seneca paid $1,000 of this fee, citing a section of the insurance policy that reads “When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department services charges: (1) Assumed by contract or agreement prior to loss; or (2) Required by local ordinance.” Neither *499 party suggests that these services were provided under contract and a review of the Town of Hudson General By-Laws reveals no requirement that the fire department charge for administering a fire watch when a sprinkler system becomes inoperable. Consequently, these charges are not covered by this section of the policy. American suggests that like the protective measures required by the insurance policy, these costs are covered by the “Loss Conditions, Duties in Event of Loss or Damage.” The fire watch was initiated by the fire department prior to the fire, however, so these costs are not covered by this section of the policy either. This court therefore finds that Seneca is not responsible under the policy for the Hudson Fire Department’s service charges.
III. Conclusion
While the “Loss Conditions, Duties in Event of Loss or Damage” provision of the insurance policy does not explicitly state that it covers costs associated with protecting the insured properly from further damage, it does so by implication. A reasonable policyholder would expect these expenses to be covered under the circumstances and Seneca must therefore cover the $79,350.50 expended by American for guard services following the fire, up to the limits of the policy. The section of the policy discussing fire department service charges, however, does not cover the $3,934 billed by the Hudson Fire Department for fire watch services initiated prior to the fire, and American is therefore not entitled to reimbursement for those costs.
ORDER
For the foregoing reasons, the Defendant’s Motion for Partial Summary Judgment is ALLOWED in part and DENIED in part, and Plaintiffs Motion for Summary Judgment is also ALLOWED in part and DENIED in part.
It is hereby DECLARED, ADJUDGED and DECREED that Seneca Insurance Company is obligated to pay American Commercial Finance Corporation for guard services following the insured loss, up to the limits of the policy, but that Seneca is not obligated to pay for fire watch services provided to American Commercial Finance Corporation by the Hudson Fire Department in connection with the insured loss.

 American initially claimed $87,102 in expenses related to the fire. Of this sum, $3,934 was billed by the Hudson police department, so presumably the guard service cost $83,168. However, American was awarded only $83,284.50 by the Referees at the Reference Hearing. In its Complaint, American seeks $83,284.50, including the Fire Department charges of $3,934. Thus, it appears that American is seeking only $79,350.50 for the guard services rendered by the private security company.

Secüon E(3)(4) states: “Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.”

In this case, the total costs, including the security fees, would not exceed the Limit of Insurance.