[Cite as *State v. Brooks*, 2011-Ohio-3722.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO. 2010 CA 48

v.                                     :          T.C. NO.    08CR723

NATHANIEL B. BROOKS                    :           (Criminal appeal from
                                                   Common Pleas Court)
    Defendant-Appellant            :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____29th____ day of ____July____, 2011.

. . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

P.J. CONBOY II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Nathaniel Brooks, Jr. appeals from a judgment of the Greene County Court of Common Pleas, which denied his petition for post-conviction relief.   For the following reasons, the trial court's judgment will be affirmed.

I

**{¶ 2}** Brooks was indicted for and pled not guilty to one count of complicity to aggravated robbery (Count One) and one count of complicity to commit aggravated burglary (Count Two). Brooks's counsel subsequently informed the prosecutor that Brooks was "interested in meeting with investigating agents for purposes of an 'off-the-record' proffer or discussion concerning a drug enterprise investigation."

**{¶ 3}** On December 11, 2008, Brooks and the State entered into an oral agreement whereby Brooks agreed to proffer information to the State concerning criminal activity and the State agreed to recommend community control sanctions. The agreement required Brooks to provide truthful statements concerning the incident that resulted in his indictment and any additional information he possessed regarding other involved individuals. Brooks states that, as a result of that agreement, he decided to change his plea to no contest.

**{¶ 4}** On the same date (December 11), Brooks pled no contest to complicity to aggravated burglary (Count Two), a first degree felony. As part of the written plea agreement, the State agreed to dismiss the complicity to commit aggravated robbery charge (Count 1). The plea form further stated that Brooks had been informed that there was a presumption of prison for first degree felonies. During the hearing, Brooks was asked whether any promises had been made to him concerning that plea other than those that are contained in the plea agreement; Brooks responded, "No." The oral agreement was not mentioned nor made a part of the record at the plea hearing. However, the trial judge (a visiting judge) was apparently aware from an off-the-record conversation between counsel in chambers that Brooks intended to speak with law enforcement officers. At the plea hearing,

the trial court found Brooks guilty and ordered a presentence investigation.

{¶ 5}    Later the same day, Brooks and the State entered into a written agreement so that "there are no misunderstandings concerning the meaning of 'of[f]-the-record'." The agreement provided, generally, that "no statements made or other information provided by [Brooks] during the 'off-the-record' proffer or discussion related to the referenced investigation will be used against [Brooks] in any criminal case," but it addressed the circumstances under which Brooks's statements to law enforcement officers could be used against him. Those circumstances included: "If [Brooks] is untruthful in his response, this agreement shall be deemed null and void and that State of Ohio will use the information provided against him in further proceedings." The proffer agreement did not address the change of plea or include a sentence recommendation in exchange for the proffer.

{¶ 6}    After the plea but prior to sentencing, Brooks twice met with Director Bruce L. May of the Greene County Agencies for Combined Enforcement ("ACE Task Force"). Brooks offered some information, but May believed that the information was "misleading, deceiving, major things were omitted, and [Brooks] was not telling truthfulness [sic] and in totality which he was required to do."

{¶ 7}    Brooks was sentenced by the same visiting judge on February 9, 2009. The State recommended a six-year prison term. Brooks was asked if he had anything to say. He apologized to the court and his family, told the court that "[t]his will not be a revolving door for me," and asked for the opportunity to prove that he can be "a good respectful citizen, father, husband, and above all, a good man." The trial court found that Brooks was not amenable to community control and sentenced him to five years in prison. Neither

counsel nor Brooks objected to the sentence or said anything regarding the proffer agreement between the parties.

{¶ 8}   Brooks appealed from the trial court's judgment.

{¶ 9}   In April 2009, Brooks moved to withdraw his no contest plea, claiming that the State breached an agreement to recommend six months of incarceration at the Greene County Jail in exchange for proffered information by Brooks regarding the other perpetrators of the robbery and burglary.   Brooks supported his motion with an affidavit by his trial counsel, Anthony VanNoy.   Mr. VanNoy stated in his affidavit that he had negotiated a plea agreement with the State on Brooks's behalf whereby Brooks would plead guilty to one count of complicity to commit aggravated burglary and the other charge would be dismissed. Mr. VanNoy further stated:

{¶ 10}   "5.   Mr. Brooks was also to proffer information with regard to other Defendants and in exchange for the proffer, Mr. Brooks would be sent to jail for six months with regard to his guilty plea.

{¶ 11}   "6.   Mr. Brooks was cooperative and provided substantial information during said proffer sessions.

{¶ 12}   "7.   The proffer part of the plea agreement was too subjective and thus I do not believe that Mr. Brooks'[s] guilty plea was entered knowingly and voluntarily."

{¶ 13}   A hearing on Brooks's motion was held on July 10, 2009.[1]   Brooks and

---

[1]On July 8, 2009, two days before the hearing, the State moved to dismiss Brooks's motion to withdraw his plea, arguing that the trial court lacked jurisdiction to consider the motion due the pending direct appeal.   Brooks filed a notice of voluntary dismissal of his direct appeal on the same date.   *State v. Brooks* (July 16, 2009), Greene App. No. 2009 CA 15 (decision and final judgment entry sustaining motion for voluntary dismissal).

VanNoy testified on Brooks's behalf. May testified for the State regarding the two meetings he had with Brooks under the proffer agreement.

{¶ 14} On July 14, 2009, the trial court overruled Brooks's motion to withdraw his plea, without addressing the merits of Brooks's arguments, on the ground that Brooks's arguments were more properly raised in a petition for post-conviction relief. Brooks appealed the trial court's order, but the appeal was dismissed voluntarily. *State v. Brooks* (Feb. 25, 2010), Greene App. No. 2009 CA 55.

{¶ 15} In light of the trial court's ruling on his motion to withdraw his plea, Brooks subsequently filed a petition for post-conviction relief, again arguing that his plea was not entered knowingly, intelligently, and voluntarily because the "proffer part of the plea agreement was too subjective." Brooks relied upon VanNoy's affidavit and the transcript of the July 10, 2009 hearing on his prior motion to withdraw his plea. Brooks supplemented his petition with a written statement[2] by Sheldon Smith (whose property was allegedly targeted during the burglary and robbery for which Brooks was charged), which indicated Smith's belief that Brooks had committed "no crime or action against [his] personal well[-]being or property."

{¶ 16} On March 12, 2010, the trial court held a hearing on Brooks's petition, at which time the parties agreed to rely on the evidence from the July 10, 2009 hearing. Apparently, no additional evidence was taken.

{¶ 17} On June 16, 2010, the trial court denied Brooks's petition for post-conviction relief. After considering the evidence presented at the July 10, 2009 hearing and Smith's

---

[2] Brooks's memorandum refers to Smith's statement as an "affidavit," but the document was not notarized.

statement, the trial court concluded that "the facts do establish that a proffer agreement was made with an understanding that the Defendant could receive some benefit from that agreement, if he was truthful, and the Court [the visiting judge] was aware of this understanding." However, the court further found that Brooks "did not satisfy his end of the contract and therefore the agreement is null and void and that the State was entitled to make whatever recommendation they chose."

{¶ 18} Brooks appeals from the denial of his petition for post-conviction relief.

II

{¶ 19} In his sole assignment of error, Brooks claims that the trial court abused its discretion in overruling his petition for post-conviction relief, because his no contest plea was not given knowingly, intelligently, and voluntarily, and he was denied due process. Brooks states that he would not have entered a no contest plea but for the proffer agreement and that the subjective nature of the agreement rendered his plea involuntary. Brooks emphasizes that his compliance with the "truthfulness" requirement was dependent upon others' (i.e., Director May's) subjective perception of his cooperation and truthfulness. Brooks asserts that he provided all the information he had, that he was truthful, and that his met his obligation under the proffer agreement. Brooks asserts that the State thus breached the agreement by failing to recommend community control.

{¶ 20} "A post[-]conviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Steffen*, 70 Ohio St.3d 399, 410, 1994-Ohio-111. See, also, *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶48. To prevail on a petition for post-conviction relief, the defendant must establish a

violation of his constitutional rights which renders the judgment of conviction void or voidable.   R.C. 2953.21.

{¶ 21} We review the trial court's denial of Brooks's petition for an abuse of discretion.   *Gondor* at ¶52.   An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.   *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶130.   Moreover, when the trial court has ruled on a petition for post-conviction relief after a hearing, we must give deference to the trial court's findings of fact.   *Gondor* at ¶47-48. A reviewing court should not overrule the trial court's findings on a petition for post-conviction relief if those findings are supported by competent and credible evidence.   Id. at ¶58.

{¶ 22} At the May 10, 2009 hearing, Brooks testified that he signed a proffer agreement and, in return, the State agreed to recommend community control at sentencing if he cooperated.   Brooks understood that he was required to be truthful "to the best of my ability."   At least two proffer sessions occurred between Brooks and May.   Brooks testified that May asked about certain "things" and individuals.   Brooks stated that he "gave them to the best of what I knew of those certain things;" he gave "[e]verything that I had."   May told Brooks that he was "unhappy" with the information, because he didn't believe that Brooks had given enough information.   Brooks testified that, after the second session, May said that Brooks "was better."   Brooks stated that he was never told that May believed he was being untruthful.

{¶ 23} Brooks's trial attorney, Mr. VanNoy, was present during these two proffer sessions with May.   VanNoy testified that he believed Brooks gave "truthful" and "useful"

information at the proffer meetings, and that Brooks "would not have entered a plea had he not had a proffer in this case." VanNoy stated that Brooks had been "very consistent" with him "from day one" and that "the sincerity that [Brooks] conveyed with respect to what was going on caused me to believe that he was telling the truth to law enforcement." VanNoy acknowledged that Brooks may not have told him (VanNoy) everything and that May might have been privy to additional information.

{¶ 24} In contrast, May, a 36-year veteran of law enforcement, testified that he leads a multi-jurisdictional enforcement agency that investigates felony violations involving, among other things, drugs, homicides, and felonious assaults. The ACE Task Force has been investigating "the Brooks organization," named for Brooks's brother. May stated that the organization had committed numerous crimes – such as home invasions, murder, torture, and robberies – over a span of more than ten years; he said that several witnesses and co-conspirators have spoken with law enforcement officers regarding the organization. According to May, Nathaniel Brooks "was a principal figure in that group." When the proffer sessions occurred, May had gathered much information about the participation of Brooks's relatives, Brooks's friends, and other co-conspirators in the Brooks organization. May anticipated that the ACE Task Force would be seeking indictments regarding several crimes by the members of the organization within the next few months.

{¶ 25} May testified that Brooks was unaware of the information that had been gathered prior to the proffer sessions. May stated that Brooks's information during the proffer sessions was "misleading and wasn't directed toward any of the substance of what we desired from him and what we felt that we knew that he could offer." May indicated

that "major things were omitted" from Brooks's information. May acknowledged that he did not inform Brooks prior to the agreement what specific information was being sought and that he "could not lead Mr. Brooks" during their meetings.

{¶ 26} The parties do not challenge the trial court's conclusion that a proffer agreement was made with the understanding that Brooks would receive a benefit if he provided truthful information to law enforcement. Brooks argues that his plea was constitutionally infirm, because the proffer agreement and, thus, the plea was based on an individual's (i.e., May's) subjective assessment of his truthfulness.

{¶ 27} Plea agreements are governed by contract law principles. *State v. Borts*, Montgomery App. No. 23752, 2010-Ohio-4149, ¶4. "Contract clauses which make the duty of performance of one of the parties conditional upon his satisfaction are generally referred to as 'satisfaction clauses.' These clauses have been divided by the courts into two categories, and have been interpreted in accordance with the category.

{¶ 28} "Where the satisfaction clause requires satisfaction as to such matters as commercial value or quality, operative fitness, or mechanical utility, dissatisfaction cannot be claimed unreasonably. In these contracts, an objective standard is applied to the satisfaction clause and the test is whether the performance would satisfy a reasonable person.

{¶ 29} "If, on the other hand, the satisfaction clause relates to matters involving fancy, personal taste, or judgment, then a subjective standard is applied, and the test is whether the party is actually satisfied. Although application of a subjective standard to a satisfaction clause would seem to give the obligor virtually unlimited latitude to avoid his duty of performance, such is not the case. In these situations, courts impose the limitation

that the obligor act in good faith. Thus, under the subjective standard, the promisor can avoid the contract as long as he is genuinely, albeit unreasonably, dissatisfied. Which standard applies in a given transaction is a matter of the actual or constructive intent of the parties, which, in turn, is a function of the express language of the contract, or the subject matter of the contract." (Internal citations omitted.) *Hutton v. Monograms Plus, Inc.* (1992), 78 Ohio App. 3d 176, 181.

{¶ 30} Brooks and his trial counsel acknowledged that the proffer agreement between Brooks and the State required Brooks to provide truthful information. Mr. VanNoy testified that, if Brooks were untruthful, the State would not be bound by any sentence recommendation. In short, the proffer agreement conditioned the State's beneficial sentencing recommendation upon the State's (in this case, May's) satisfaction that the information provided by Brooks was truthful. Although the agreement required considerable confidence in the law enforcement officer's ability to accurately assess Brooks's truthfulness, the agreement was valid under contract law, despite the subjective nature of the satisfaction clause.

{¶ 31} Moreover, the record does not reflect that the subjective nature of the agreement rendered Brooks's plea involuntary. Brooks and his trial counsel were aware, prior to the plea, that the proffer agreement would require Brooks to speak with law enforcement officers and to provide "full and accurate" facts. Brooks did not object to the subjective terms of the proffer agreement before or at the plea hearing. We note that Brooks received the additional benefit that Count One of the indictment (complicity to aggravated robbery) was dismissed as a result of the plea.

{¶ 32} Brooks further argues that he did not breach the plea agreement. "Whether there has been a breach of a plea agreement is a determination that initially rests within the sound discretion of the trial court, and is reviewed on appeal under an abuse of discretion standard." Id.

{¶ 33} The court was presented with conflicting testimony regarding Brooks's compliance with his obligation under the proffer agreement that he provide truthful information to law enforcement officers. Brooks testified that he was truthful with May and provided "everything he had;" Brooks's trial counsel also believed that to be true. May, on the other hand, had substantial information about the "Brooks organization" prior to the proffer sessions and believed that Brooks's information was "misleading," "deceitful," and incomplete. The trial court expressly found May's testimony to be more credible and well-supported. In light of the evidence, the trial court's conclusion was reasonable and not erroneous.

{¶ 34} Accordingly, the trial court did not abuse its discretion in finding that Brooks had breached the proffer agreement with the State. As a result, the State was not bound by its agreement to recommend community control to the trial court at sentencing, and Brooks's due process rights were not violated when the State recommended a sentence of six years.

{¶ 35} Brooks's assignment of error is overruled.

III

{¶ 36} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Elizabeth A. Ellis
P.J. Conboy II
Hon. Stephen A. Wolaver