[Cite as *State v. Blair*, 2012-Ohio-769.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                                  :        Case No. 11CA3429
                                                :
    Plaintiff-Appellee,                         :
                                                :        DECISION AND
    v.                                          :        JUDGMENT ENTRY
                                                :
CYNTHIA BLAIR,                                  :
                                                :        **RELEASED:  02/22/12**
    Defendant-Appellant.                        :
_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel, Scioto County
Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Harsha, J.

{¶1}    Cynthia Blair appeals the trial court's decision denying her motion for

judicial release, arguing that the state breached the terms of their plea agreement by

opposing her motion.  However, the plea agreement contained a subjective satisfaction

clause and the record supports the state's good faith belief that Blair did not provide

useful information in accordance with the agreement.  Accordingly, the state was not

bound by the terms of the agreement and was free to oppose judicial release.

Moreover, the trial court did not err in denying her motion based on her failure to satisfy

the terms of the plea agreement.  Additionally, the court had an independent basis to

deny the motion, i.e., Blair's failure to complete rehabilitative programs while in prison.

## I. FACTS

{¶2}    In 2005, Cynthia Blair pleaded guilty to aggravated trafficking of drugs, a felony of the second degree, and weapon under disability, a felony of the third degree. Subsequently, the trial court sentenced her to a mandatory five year prison term for her drug conviction and a consecutive five year prison term for her weapons conviction, for a total of ten years.

{¶3}    Prior to her guilty plea, Blair entered into a plea agreement with the state. After she had entered her plea, the state sent Blair's trial counsel a letter memorializing the agreement.  In addition to summarizing Blair's convictions and sentences, the letter explains that "if Mrs. Blair helps the Sheriff's Office with a successful prosecution in the death of Anthony Perkins, our office will have no objection to judicial release at five years.  If she does not, we will oppose the judicial release after five years.  Successful prosecution will be determined by the sincerity and forthrightness of her contributions and assistance to the case and not the outcome of the case.  As always, the sincerity of efforts is a subjective matter and will be determined by the Sheriff's deputies in consultation with the Prosecutor's Office."  The letter closes by stating "[i]f this does not accurately state our agreement, please let me know at your earliest convenience."  There is no indication in the record that Blair responded.

{¶4}    Subsequently, the state sent a second letter to Blair's trial counsel notifying her that it did not believe the information it had received from Blair was helpful. The letter stated that the state had "reviewed the statement given by Cynthia Blair to Jodi Conkel and discussed the matter with the Sheriff's deputies.  It does not appear that the information Mrs. Blair gave Detective Conkel was useful.  Mrs. Blair denied any

first hand knowledge of the Perkins matter and said she would be unable to assist in getting information from Broc Adkins because he would be wary of her since she had been in jail a while.   She further stated that the only reason she was talking was to help her daughter." The state concluded that based on Blair's statement and "a review of the other information in the case," it did not believe that she had "upheld her end of the bargain."

{¶5}    Blair filed the present motion for judicial release after serving more than five years of her sentence.  Subsequently, the trial court held a hearing on the motion, which the state opposed.

{¶6}    At the hearing Blair testified that while incarcerated she completed many hours of community service and other classes.  The trial court noted however, that she did not complete any of the recommended five classes.  It stated "what I told you at your plea is you take all programs that are offered to you, and participate at a good or excellent level of participation, and at that time I would consider a judicial release.  All five programs they recommended are not showing as being completed." Blair however denied this and claimed that she completed all five classes.

{¶7}    Regarding her interview with Detective Conkel, Blair further testified that she was truthful with Conkel about Anthony Perkins and "told her everything [she] knew, and that wasn't much * * * ."  Blair claimed however that her trial counsel did not explain the full terms of the plea arrangement to her and she did not receive copies of the letters from the state until after her plea and interview with Detective Conkel.

{¶8}   On cross examination, Blair admitted that prior to Perkins' death she "had no personal knowledge of who provided the pills to Anthony Perkins." And that all she knew was "that he o/d."

{¶9}   Detective Conkel also testified about her interview with Blair. She stated that Blair just told her "second and third hand information" and "she never said she was there and seen anybody sell anybody pills." She also testified that "nothing she gave us was useful, and that if she did have information she was basically B-S'n with us, pulling our leg, however you want to say. Because she gave no implication of knowing anything that could lead to an arrest." Conkel affirmed that she believed that Blair was not being forthright and that "[t]here was no useful information out of her interview. She denied any firsthand knowledge of anything involving Anthony Perkins death."

{¶10}  The trial court denied Blair's motion for judicial release finding that "she did not keep her end of the bargain" based on the letter memorializing her plea agreement. The trial court concluded that Blair either "misrepresented up front that she was going to make this deal, or she just backed out of the deal."

{¶11}  The trial court also denied her release based on her lack of participation in the offered programs. The trial court stated "all four [sic] programs offered to her were declined * * * her rate of recidivism therefore would be much higher. She's not cooperating. She's not showing that she wants to get out, so based upon that, I'm going to deny the judicial release." This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶12}  Blair presents one assignment of error for our review:

{¶13} "THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT THE JUDICIAL RELEASE OF THE DEFENDANT-APPELLANT AS NEGOTIATED THEREBY APPROVING THE BREECH [sic] OF THE PLEA AGREEMENT BETWEEN THE DEFENDANT-APPELLANT AND THE STATE OF OHIO."

### III. PLEA AGREEMENTS

{¶14} Blair argues that state breached the terms of their plea agreement by opposing her motion for judicial release. Specifically, Blair asserts that she complied with the terms of the plea agreement by providing the information she knew about the death of Anthony Perkins to the Sherriff's Office. However, she claims that the state "did not like" the information she provided and in response opposed her judicial release in breach of their agreement.

{¶15} "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. The terms of a plea agreement must be ascertained before it can be determined whether a party breached the agreement. *State v. Fetty*, 11th Dist. No. 2010–P–0021, 2011-Ohio-3894, ¶ 21.

{¶16} On appeal, Blair does not contest that the contents of her plea agreement were accurately memorialized in the letter from the state. Therefore, we simply review the four corners of the document. "Where a contract is unambiguous on its face, we interpret it as a matter of law without reference to extrinsic evidence. *Graham v. Drydock Coal* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949." *State v. Pasturzak*, 4th Dist. No. 08CA3252, 2009-Ohio-4222, ¶ 12. "When the facts presented are undisputed,

whether they constitute a performance or a breach of a written contract, is a question of law for the court." *Luntz v. Stern*, 135 Ohio St. 225, 20 N.E.2d 241, (1939), at paragraph five of the syllabus. Thus, we will apply a de novo standard of review. Both Blair and the state argue that we should apply an abuse of discretion standard to determine whether there has been a breach of their plea agreement. We recognize that other Ohio appellate courts have reviewed whether a party has breached a plea agreement under an abuse of discretion standard. *See State v. Payton*, 6th Dist. Nos. E-09-070 and E-09-071, 2010-Ohio-5178, ¶ 11, *State v. Flowers*, 2nd Dist. No. 22751, 2009-Ohio-1945, ¶ 6, *State v. Willis*, 6th Dist. No. E-05-026, 2005-Ohio-7002, ¶ 9, *State v. Mathews*, 8 Ohio App.3d 145, 146, 456 N.E.2d 539 (10th Dist.1982). However, because the Supreme Court of Ohio has held that whether there is a breach of an unambiguous written contract is a question of law, we will apply a de novo standard of review in this case.

{¶17} Contract clauses which make the duty of performance conditional upon one party's satisfaction are generally referred to as "satisfaction clauses." *State v. Brooks*, 2nd Dist. No. 2010 CA 48, 2011-Ohio-3722, ¶ 27. Courts have divided satisfaction clauses into two categories, objective and subjective. *Knowles v. Ohio State Univ.*, 10th Dist. Nos. 05AP-727 and 05AP-739, 2006-Ohio-6732, ¶ 18. Which standard applies is a matter of the actual or constructive intent of the parties, which, in turn, is a function of the express language of the contract, or the subject matter of the contract. *Id.* "Where a subjective standard is applied to determine whether a party is 'satisfied,' the test is whether the party is actually satisfied. 'Although application of a subjective standard to a satisfaction clause would seem to give the obligor virtually

unlimited latitude to avoid his duty of performance, such is not the case.  In these situations, courts impose the limitation that the obligor act in good faith.'" (Citations omitted.) *Id.* at ¶ 21, quoting *Hutton v. Monograms Plus, Inc.*, 78 Ohio App.3d 176, 181, 604 N.E.2d 200 (2nd Dist.1992). Thus, under the subjective standard, the promisor can avoid the contract as long as he is genuinely dissatisfied.  *Id.*

{¶18}  In this case, the terms of the plea agreement make it clear that the state's duty of performance was conditional upon its subjective satisfaction with the information Blair provided.  The letter expressly requires that Blair must help with a "successful prosecution" in the death of Anthony Perkins.  The agreement explains that a successful prosecution "will be determined by the sincerity and forthrightness" of Blair's contributions to the case, not the outcome of a case.  Furthermore, the agreement clarifies that the "sincerity of efforts is a subjective matter" and will be determined by the Sheriff's deputies along with the Prosecutor's Office.  Accordingly, based on the express language of the agreement we will apply a subjective standard to the satisfaction clause.

{¶19}  We conclude that the state had a good faith basis for being unsatisfied with the information Blair provided.  The record shows that Blair herself admitted that she did not have any firsthand knowledge of Anthony Perkins' death and the only thing she knew was that he overdosed.  Moreover, Detective Conkel testified that she did not believe that Blair was being forthright during the interview and that she did not provide any useful information that could lead to an arrest.  The state sent a letter to Blair's trial counsel confirming that it did not feel any of the information Blair gave to Detective Conkel was useful, citing again Blair's denial of any firsthand knowledge regarding

Perkins' death. The letter also stated that based on the interview and other information in the case, it did not feel that Blair had "upheld her end of the bargain."  Based on this evidence, the state's subjective belief that Blair did not perform according to the plea agreement appears to have been reached in good faith.  As a result of Blair's breach, the state was then released of its obligations under the plea agreement and was free to oppose her judicial release.  *See State v. Adkins*, 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E.2d 729, ¶ 10 (4th Dist.).  Accordingly, the trial court did not err by finding that Blair breached the terms of the plea agreement and denying her motion judicial release.

{¶20}  Finally, even if we were to assume that the state either lacked good faith or was unreasonable in concluding Blair breached the plea agreement, the trial court expressed an adequate independent basis for rejecting her motion.  That is, it found she failed to complete prison sponsored programs aimed at rehabilitation.  This finding was sufficient on its own to support rejecting her motion.  Therefore, we overrule Blair's assignment of error and affirm the trial court's decision.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge


## **NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**