[Cite as *State v. Furnier*, 2013-Ohio-5376.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                              :
                                            :
    Plaintiff-Appellee,              :          Case No. 13CA3546
                                            :
    vs.                              :
                                            :          DECISION AND JUDGMENT
DANIEL R. FURNIER,                          :          <u>ENTRY</u>
                                            :
    Defendant-Appellant.             :          **Released: 12/06/13**
_____

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Matthew A. Wisecup, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

McFarland, P.J.

{¶1} Daniel Furnier (Appellant) appeals from the judgment entry of the Scioto County Court of Common Pleas sentencing him to a total term of imprisonment of twelve years for one count of robbery of a bank, three counts of theft, one count of theft by deception, one count of receiving stolen property, and one count of breaking and entering. Appellant contends the trial court erred by not imposing a lesser sentence of ten years. For the following reasons, we affirm the decision of the trial court.

FACTS

{¶2} On June 7, 2011, Appellant Daniel Furnier was indicted by the Scioto County Grand Jury for six multi-count indictments involving theft, breaking and entering, burglary, robbery, vandalism, and receiving stolen property, which occurred to local businesses and individuals between July 2010 and April 2011. On February 2, 2012, after approximately seven months of trial court proceedings, Appellant concluded plea negotiations and entered guilty pleas to the following cases:

> Case No. 11-CR-408, Count 1-F2 robbery, a violation of R.C. 2911.02(A)(2)/(B);
>
> Case No. 11-CR-477, Count 1- F5 theft, a violation of R.C. 2913.02(A)(3)/(B)(2); R.C. 2913.71(A);
>
> Case No. 11-CR-478, Count 4- F4 receiving stolen property, a violation of R.C. 2913.51(A)/(C);
>
> Case No. 11-CR-478, Count 5- F5 theft by deception, a violation of R.C. 2913.02(A)(3)/(B)(2);
>
> Case No. 11-CR-479, Count 2-F4 theft, a violation of R.C. 2913.02(A)(1)/(B)(2);
>
> Case No. 11-CR-484, Count 2- F4 theft, a violation of R.C. 2913.02(A)(1)/(B)(2);
>
> Case No. 11-CR-485, Count 1- F5 breaking and entering, a violation of R.C. 2911.13(A)/(C).

{¶3} Appellant was rescheduled for sentencing on March 7, 2012. A plea agreement between Appellant and the State provided for a sentence of twelve years total for the above charges. However, the State agreed to a possible recommendation of an aggregate sentence of ten years, contingent upon Appellant's full cooperation in recovery of some of the property stolen or providing information which would lead to the recovery of the property. Among other items stolen or vandalized, and cash, a significant amount of jewelry was taken from a local jewelry store. Between the date of the plea hearing and the sentencing hearing, Appellant had approximately 30 days to perform his part of the plea agreement.

{¶4} When Appellant returned for sentencing, the State contended Appellant had breached the plea agreement by failing to recover some of the jewelry or other stolen items or by providing information that would lead to the recovery of the stolen property. Appellant argued that he had been in custody awaiting sentencing and no one from the Scioto County Sheriff's Office or the prosecutor's office had contacted him to obtain any additional information. The State recommended the aggregate twelve-year sentence which the court imposed. Appellant was also ordered to make restitution to all the victims in a total amount of $36, 570.69, and court costs. Furnier previously appealed from the trial court's judgment, but the appeal was

dismissed for lack of a final appealable order. *State v. Furnier,* 4th Dist.

Scioto No. 12CA3474, 2013-Ohio-455. The appeal herein has been

perfected.

ASSIGNMENTS OF ERROR

I.      THE COURT ERRED BY NOT ENFORCING THE PLEA
        BARGAIN AGREEMENT FOR A LOWER SENTENCE.

ASSIGNMENT OF ERROR ONE

{¶5} With regard to his sole assignment of error, Appellant frames

the issue as follows: "In a plea bargain with a subjective satisfaction clause,

is it good faith basis for non-satisfaction where the State makes no effort to

determine the usefulness of the information provided, and no effort is made

to obtain additional information?" Appellee State of Ohio has countered that

it was Appellant's burden to recover stolen property or provide information

leading to recovery, pursuant to the verbal agreement. Appellee argues the

failure to do so constituted a breach of the agreement and the State was

released from its obligation to recommend a lesser sentence.

A. STANDARD OF REVIEW

{¶6} "When the facts presented are undisputed, whether they

constitute a performance or a breach of a written contract, is a question of

law for the court." *Luntz v. Stern,* 135 Ohio St. 225, 20 N.E.2d 241 (1939),

at paragraph five of the syllabus; *State v. Blair*, 4th Dist. Scioto No. 11

CA3429, 2012-Ohio-769, ¶16.  Thus, we will apply a de novo standard of review. *Id.*  We recognize that other Ohio appellate courts have reviewed whether a party has breached a plea agreement under an abuse of discretion standard.  *Id.*  See *State v. Payton,* 6th Dist. Erie Nos. E-09-070 and E-09-071, 2010-Ohio-5178, ¶ 11; *State v. Flowers*, 2nd Dist. Montgomery No. 22751, 2009-Ohio-1945, ¶ 6; *State v. Willis,* 6th Dist. Erie No. E-05-026, 2005-Ohio-7002, ¶ 9; *State v. Mathews,* 8 Ohio App.3d 145, 146, 456 N.E.2d 539 (10th Dist. 1982); *Blair,* ¶ 16.  However, because the Supreme Court of Ohio has held that whether there is a breach of an unambiguous written contract is a question of law, we will apply a de novo standard of review in this case. *Blair*, ¶ 16.

### B. LEGAL ANALYSIS

{¶7}  It has been recognized that plea agreements are essential to the prompt disposition of criminal proceedings.  *Santobello v. New York,* 404 U.S. 257, 261, 92 S. Ct. 495 (1971); *State v. Burks,* 10th Dist. Franklin No. 04AP531, 2005-Ohio-531, at ¶ 18.

{¶8}  Following *Santobello,* Ohio courts adopted the rule that when a valid plea agreement is breached by the state, the trial court, within its sound discretion, may either allow the negotiated plea to be withdrawn, or may require the state to fulfill its end of the bargain.  *Mathews, supra; State v.*

*Ford,* 4th Dist. Lawrence No. 97CA32, 1998 WL 79885 (Feb. 18, 1998), *3.

See also, *State v. Davenport*, 116 Ohio App.3d 6, 10-11, 686 N.E.2d 531

(12th Dist. 1996); *State v. Woyan*, 4th Dist. Athens No. 96CA 1772, 1997

WL 426117, (July 21, 1997); *State v. Hess,* 4th Dist. Adams No. 515, 1991

WL 286052, (Dec. 24, 1991).  The trial court is in the best position to decide

whether circumstances require specific performance of the agreement, or

whether the circumstances require granting the defendant the opportunity to

withdraw his plea.  *Mathews*, supra at 146, 456 N.E.2d 539, citing

*Santobello.*  However, while the trial court may choose among these two

remedies within its discretion, failure to grant either remedy constitutes an

error as a matter of law.  *Santobello* at 263; *Mathews* at 146, 456 N.E.2d

539.

{¶9}  "Principles of contract law are generally applicable to the

interpretation and enforcement of plea agreements."  *State v. Blair, supra,*

quoting *State v. Bethel,* 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d

150, ¶ 50.  The terms of a plea agreement must be ascertained before it can

be determined whether a party breached the agreement.  *Blair*, *supra*, citing

*State v. Fetty,* 11th Dist. Portage No. 2010-P-0021, 2011-Ohio-3894, ¶ 21.

{¶10}  The relevant portions of the transcript of Appellant's plea

hearing are set forth as follows:

THE COURT:  Does the property have to be discovered and returned to the State within this 30 days period?

The State:    That's what the State is asking, Your Honor.

* * *

Counsel:      Your Honor, Mr. Furnier has given me the location of where he knows the property was.  I relayed that to the State.

THE COURT:  And you understand that that in and of itself is not enough to come down to the 10 year recommendation from the State?

Counsel:      Yes, sir.

* * *

Counsel:      Judge, I think from our point of view what's most important from our perspective in recommending a lower sentence is the cooperation, full cooperation of Mr. Furnier.  If Mr. Furnier does all in his power to either recover or lead to the recovery of the jewelry, then our recommendation would be a lower sentence.  Now it may be that the person Mr. Furnier suspects or the person Mr. Furnier knows the jewelry went to, may not have it at this point.

THE COURT:      And is that sufficient?

The State:    Well, the State may investigate the case.  That's obviously not going to be done in 30 days, but if the State believes that property is located with an individual that is unwilling to turn over the jewelry there may be an investigation by the police and possible indictment by the State.  And obviously that's not something that's going to be resolved in 30 days.  If that's the case, then so be it.  Simply, the State asks that Mr. Furnier cooperate in providing the name and doing the most he can do with his position at this point.

THE COURT:      Well then he's about 10 minutes away from supplying a name, right?

Counsel:      He's already supplied it.

THE COURT:      Already supplied.  So has he done everything he's supposed to do?

Mr. Wisecup:      I have the same concern, Your Honor, I have the same concern.  It's uncertain what will occur between now and 30 days from now as far as recovery of the jewelry.  The State's aware of that.  The State simply asks for Mr. Furnier's full cooperation in recovering the jewelry.  It may be there's more information Mr. Furnier can provide.  There has been a name provided.  We're hopeful that that will lead to recovery of some jewelry.  If Mr. Furnier knows additional information or can cooperate through the process between now and until 30 days from now, then the State will likely  - - and the State would recommend 10 years.  Simply we're asking for cooperation, I think, Judge.

THE COURT:      Rather than the physical return of property?  You agree that you still may recommend 10 years 30 days from now without the return of any property?

Mr. Wisecup:      That's my understanding, Your Honor.

* * *

Mr. Wisecup:      Your Honor, if the State is satisfied that Mr. Furnier has been cooperative and has tried to the best of his ability to secure the property within the next 30 days, then the State would recommend 10 years at sentencing…I think that represents the full agreement from the State's prospective (sic), Your Honor.

{¶11}  The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement.  *Kelly v. Med. Life Ins. Co.,* 31 Ohio St. 3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus, *Ford* at *3.  Contractual language giving rise to doubt or ambiguity must be interpreted against the party who used it.  *Graham v. Drydock Coal Co.,* 76 Ohio St. 3d 311, 313, 667 N.E. 2d 949 (1996), citing

*Cent. Realty Co. v. Clutter,* 62 Ohio St. 2d 411, 406 N.E.2d 515 (1980);

*Bellish v. C.I.T. Corp.,* 142 Ohio St. 36, 50 N.E.2d 147 (1943), paragraph

one of the syllabus; *Ford*, at *3.

{¶12} Contract clauses which make the duty of performance

conditional upon one party's satisfaction are generally referred to as

"satisfaction clauses." *Blair*, ¶ 17; *State v. Brooks,* 2nd Dist. Greene No.

2010 CA 48, 2011-Ohio-3722, ¶ 27. Courts have divided satisfaction

clauses into two categories, objective and subjective. *Blair,* ¶ 17; *Knowles v.*

*Ohio State Univ.,* 10th Dist. Franklin Nos. 05AP-727 and 05AP-739, 2006-

Ohio-6732, ¶ 18. Which standard applies is a matter of the actual or

constructive intent of the parties, which, in turn, is a function of the express

language of the contract, or the subject matter of the contract. "Where a

subjective standard is applied to determine whether a party is 'satisfied,' the

test is whether the party is actually satisfied. 'Although application of a

subjective standard to a satisfaction clause would seem to give the obligor

virtually unlimited latitude to avoid his duty of performance, such is not the

case. In these situations, courts impose the limitation that the obligor acts in

good faith.'" (Citations omitted.) *Id.* at ¶ 21, quoting *Hutton v. Monograms*

*Plus, Inc.,* 78 Ohio App.3d 176, 181, 604 N.E.2d 200 (2nd Dist. 1992);

*Blair,* ¶ 17. Thus, under the subjective standard, the promisor can avoid the contract as long as he is genuinely dissatisfied. *Id.*

{¶13} Here, the terms of the verbal agreement make it clear the State's duty of performance was conditional upon its subjective satisfaction that Appellant "had been cooperative" and had "tried to the best of his ability" to secure the return of some jewelry in the 30-day time period. The State's summary to that effect, cited above, "represented the full agreement" from the State's perspective. Therefore, the subjective standard is applied to the satisfaction clause.

{¶14} We next turn to consideration of whether or not the State had a good faith basis for being unsatisfied in this matter. Appellant argues there is "zero evidence" in the record of good faith on the part of the State. Appellant contends that the State failed to show good faith because it did not send a representative from the prosecutor's office or sheriff's department to interview Appellant, did not investigate the name provided at the plea hearing, or otherwise follow up with Appellant while he was in custody. Based on his arguments, it would appear Appellant's entire understanding of the agreement was that he provide a name and then repose in the jail waiting for someone to contact him to elicit further information. We do not agree with Appellant's arguments. A review of the record demonstrates

Appellant did not "do the most he could do with his position" at the time he was awaiting sentencing. As such, we conclude the State had a good faith basis for being unsatisfied with Appellant's cooperation.

{¶15} Appellant's argument hinges primarily on the fact of his being in custody during the thirty days between the plea hearing and sentencing. We note there is no evidence in the record to show the State represented to Appellant that he could expect to be contacted at the jail. Likewise, there is no evidence the State promised to investigate the name given. Those representations were not made to Appellant at the plea hearing, nor were they provisions of the plea agreement.[1]

{¶16} At the plea hearing, Appellant knew he would be lodged in the jail at the time he represented he would and could cooperate in returning some of the jewelry at issue. Appellant assured "he's going to get some of it back." At the time of sentencing, Appellant had been in jail for 318 days. The sentencing entry made specific findings based on his criminal history. Appellant was familiar enough with the justice system enough to know that investigators or other law enforcement personnel may or may not come to jail to see an inmate. The law enforcement complex where Appellant was

---

[1] In his brief, Appellant argues the State improperly asserted representations that were not supported by the record. We observe Appellant argued at sentencing as follows: "But whenever I made the plea, that was the whole agreement, that they was going to come, you know what I'm saying, and try to - - I mean everything was going to be done." Appellant's assertion that "they," presumably the State, was "going to come" is not supported by the transcript of the plea hearing.

held houses both the jail and the investigative wing of the sheriff's department. The burden was on Appellant to let jail personnel know he would like to speak to an investigator to discuss the matter. Appellant presumably had friends or family who visited and could have relayed messages to law enforcement.

{¶17} Appellant also indicated at the plea hearing he was satisfied with his attorney's representation, an indicator of a decent attorney-client relationship. Appellant had already supplied a name through his counsel to the State at the plea hearing. Appellant could have contacted his attorney to relay messages or information. The record is devoid of any attempts Appellant made to cooperate in the return of the property or to provide information leading to the return of property. If there was any evidence tending to show Appellant made affirmative steps to make such connections, even if the evidence showed his attempts were ignored or rejected, his arguments based on the State's lack of good faith might merit more attention. Indeed, if the only barrier standing in the way of Appellant's performing his part of the plea agreement was law enforcement's not coming to see him at the jail, why, at the sentencing hearing, did he not then make a proffer of information or other cooperation that he had previously been "unable" to offer?

**{¶18}** The State promised only to recommend a lower sentence if Appellant cooperated. The State made no other promises. Appellant promised to cooperate, and then made no actions which could even be construed as minimal attempts to cooperate. Perhaps, in the future, what "cooperation" entails should be specifically defined, according to the particular factual situation, if used in a plea agreement. Here, we conclude the State had a good faith basis for being unsatisfied with Appellant's lack of cooperation with regard to returning the jewelry or providing information which would lead to the return of the property. For the foregoing reasons, we find the trial court did not err when it imposed the twelve-year sentence. As such, we overrule Appellant's assignment of error and affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.: Concur in Judgment and Opinion.


For the Court,

BY:   _____
        Matthew W. McFarland
        Presiding Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**