[Cite as *Larko v. Dearing*, 2013-Ohio-4304.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH M. LARKO, SR., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2013-A-0007 |
| NORREL DEARING, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court, Western District, Case No. 2012 CVI 529 W.

Judgment: Affirmed.

*Joseph M. Larko, Sr.,* pro se, 2210 Columbus Avenue, Ashtabula, OH 44004 (Plaintiff-Appellee).

*Katherine S. Riedel,* Law Offices of Katherine S. Riedel Co., L.P.A., Jefferson Commercial Park, 1484 State Route 46 North, No. 5, Jefferson, OH 44047 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Norrel Dearing, appeals the judgment of the Ashtabula County Court, Western District, awarding appellee, Joseph M. Larko, Sr., $900. At issue is whether the trial court abused its discretion in determining the amount of its award. For the reasons that follow, we affirm.

{¶2} Larko filed a small-claims complaint against Dearing praying for $1,500. Dearing filed an answer denying the allegations in the complaint.

**{¶3}** At the hearing, Larko testified that on March 22, 2012, he went to Dearing's residence with his father-in-law. Dearing is in the business of selling golf carts, and Larko's father-in-law was interested in buying one. While there, Dearing offered to sell Larko a golf cart. Larko said he was laid off from work and not in the market for a golf cart. However, Dearing was insistent and said, "Give me a down payment and you can pay me whenever you get the money." Larko agreed to purchase the golf cart for $2,995 for his disabled wife. He borrowed $500 from his father-in-law and gave it to Dearing as a down payment. When Dearing delivered the cart to Larko, he said he would make the next payment when he sold his wife's used golf cart.

**{¶4}** Larko sold his wife's golf cart in May 2012 for $1,000. That day, he gave the full amount to Dearing to apply to the balance he owed on the new golf cart. This brought the balance down to $1,495.

**{¶5}** In June, Larko's daughter became seriously ill. She was admitted to the Cleveland Clinic and was on life support for 90 days. At that time Larko was still laid off and was unable to make any more payments on the golf cart.

**{¶6}** On August 28, 2012, Dearing called Larko, saying he had to have more money for the cart. Larko told Dearing about his financial situation and asked him if he could take the golf cart back, sell it, refund to Larko the $1,500 he had already paid, and Dearing could keep the balance of the sales proceeds. Dearing agreed.

**{¶7}** On August 30, 2012, Dearing came to Larko's house and picked up the golf cart. He signed a receipt that Larko had prepared, which recited that the cart was "returned for sale" on August 30, 2012 and that Larko was owed $1,500.

**{¶8}** On September 4, 2012, Larko called Dearing and asked if he had sold the golf cart yet. Dearing said it was in terrible condition; that all four tires were flat; and

2

that the batteries were so low the cart would not work. Larko testified he could not believe what he was hearing because the cart was brand new and in perfect condition. Dearing said he would put it in his shed and try to sell it for Larko next year. Larko told him not to touch it.

{¶9} Later that day, Larko called Dearing and talked to Dearing's wife. Larko told her his sister had agreed to loan him the balance of the amount he owed for the golf cart and he would come out that day to pay for it and take it back. However, Dearing's wife said he better talk to Dearing before he came out.

{¶10} On the next day, September 5, 2012, Larko called Dearing and said he had the money to pay off the cart, but Dearing said he had already sold it. When Larko asked him how much he got for it, Dearing said $1,900. Larko asked who he sold it to, but Dearing would not tell him. Dearing said that he was done "messing around" with Larko; that he, Dearing, had lost money on the deal; and that if Larko wanted $350, he could come and get it. Otherwise, he would not get anything.

{¶11} Larko's sister, Debbie Wood, testified she saw the golf cart Larko purchased two to three times every week that summer because she lives on the same street as Larko and his wife. She said that Larko's wife is disabled and she used the golf cart to come to Ms. Wood's house to visit. Ms. Wood said the golf cart was in perfect condition. The seats were spotless and the cart did not have one scratch on it.

{¶12} Dearing testified that Larko paid $500 as a down payment on the golf cart and then later made another payment of $1,000. At the end of August, he called Larko and said that Larko would have to either return the cart or pay the balance. Larko told him to come and get the cart. He said there was no discussion about Dearing refunding the $1,500 that Larko had already paid.

3

**{¶13}** Dearing testified that when he rents a golf cart, he charges either $150 per week or $500 per month.

**{¶14}** Dearing said the golf cart had been outside all summer. He said that leaves had stained the seats; the batteries were dead; and it had four flat tires.

**{¶15}** Dearing admitted that he signed the receipt Larko prepared, but said the provision stating the cart was returned for sale and that Larko was owed $1,500 was not on the receipt at that time.

**{¶16}** Dearing testified he sold the golf cart for $1,950.

**{¶17}** On questioning by the court, Dearing said that when Larko called him on September 5, 2012, saying he was coming to pay the balance due on the cart, he told Larko he had already sold it.

**{¶18}** On rebuttal, Larko said that when Dearing picked up the cart, he never said anything about its condition. Larko said Dearing picked it up with a pickup truck and trailer. He said that if the cart had four flat wheels and dead batteries, Dearing would not have been able to get it on his trailer. Larko said he had driven the cart on the same day that Dearing picked it up, and none of the wheels on the cart were flat. Larko said he wrote out the entire receipt before Dearing came to pick up the cart. Moreover, Larko said he pointed out the provision in the receipt confirming that Dearing was picking up the cart to sell it and that Dearing would refund his $1,500.

**{¶19}** Because Dearing did not bring with him the receipt for the cart he signed when he picked up the cart or any invoice showing he re-sold the cart, the judge instructed him to produce copies of these documents within two weeks. Following the hearing, Dearing submitted a receipt for the cart showing Larko had paid $1,500 for it, but he did not present the receipt he said he had signed when he picked it up. Dearing

4

also submitted an invoice showing he sold various items, including one "club car" for $1,950. As noted above, Dearing told Larko on September 5, 2012, that he had already sold the cart. However, the invoice for the sale of the cart shows Dearing did not sell the cart until September 10, 2012.

**{¶20}** Following the hearing, the court entered judgment in favor of Larko, awarding him $900. Dearing appeals, asserting the following for his sole assignment of error:

**{¶21}** "The trial court erred in its determination that plaintiff-appellee was entitled to damages in the amount of $900."

**{¶22}** "'[T]he standard of review for small claims court proceedings is abuse of discretion.'" *Majecic v. Universal Mgmt. Corp.*, 11th Dist. Trumbull No. 2010-T-0119, 2011-Ohio-3752, ¶21, quoting *Video Discovery, Inc. v. Passov*, 8th Dist. Cuyahoga No. 86445, 2006-Ohio-1070, ¶7. This court has recently stated that the term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

**{¶23}** Larko testified that Dearing entered an agreement to re-sell the cart and to refund to Larko the amount he had already paid for the cart, i.e., $1,500. The purpose of damages for breach of contract is to restore the benefit of the bargain to the plaintiff by placing him in the position he would have been in but for the defendant's breach. *James v. Sky Bank*, 11th Dist. Trumbull No. 2010-T-0116, 2012-Ohio-3883, ¶31. A plaintiff seeking damages for breach of contract must present sufficient evidence to show he is entitled to damages in an amount that can be ascertained with reasonable certainty. *Id.* at ¶33.

5

**{¶24}** Witness credibility rests solely with the finder of fact. *River Oaks Homes, Inc. v. Twin Vinyl, Inc.*, 11th Dist. Lake No. 2007-L-117, 2008-Ohio-4301, ¶27. The finder of fact is entitled to believe all, part, or none of the testimony of any witness. *Id*. If the evidence is susceptible to more than one interpretation, *a reviewing court must interpret it in a manner consistent with the verdict. Id*.

**{¶25}** Dearing does not challenge the court's judgment in favor of Larko. Instead, he argues the trial court erred as to the *amount* of damages because the court did not explain in its judgment how it arrived at the amount.

**{¶26}** Here, the trial court did not provide any rationale in support of its judgment. Civ.R. 52 provides as follows:

**{¶27}** When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

**{¶28}** However, Dearing never requested findings of fact under Civ.R. 52. While R.C. Chapter 1925 governs small claims, "'there is nothing in R.C. Chapter 1925 which makes Civ.R. 52 inapplicable to small claims cases or which would preclude a party from obtaining separate findings of fact and conclusions of law.'" *Kimbel v. Clark*, 9th Dist. Summit No. 22647, 2005-Ohio-6741, ¶7, quoting *Ohio Valley Laundry & Dry*

6

*Cleaners v. Kent*, 4th Dist. Gallia No. 85CA24, 1986 Ohio App. LEXIS 9046, *1 (Nov. 10, 1986); *see also* R.C. 1925.16.

{¶29} "'The purpose of separate conclusions of law and facts is to enable a reviewing court to determine the existence of assigned error.'" *Kimbel, supra*, at ¶8, quoting *Orlow v. Vilas*, 28 Ohio App.2d 57, 59 (1st Dist.1971). However, because Dearing never requested findings of fact, we "will presume that the trial court considered all * * * relevant facts." *Fallang v. Fallang*, 109 Ohio App.3d 543, 549 (12th Dist.1996), *appeal not allowed by the Supreme Court of Ohio at* 76 Ohio St.3d 1434.

{¶30} Since the trial court's judgment was within the range of evidence adduced at the hearing, we cannot say the trial court abused its discretion in entering its award. *Behrend v. State*, 10th Dist. Franklin No. 83AP-480, 1984 Ohio App. LEXIS 9614, *5 (Mar. 22, 1984).

{¶31} For the reasons stated in the opinion of this court, appellant's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Ashtabula County Court, Western District, is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.