[Cite as *Kumar v. USA Insulation*, 2018-Ohio-5332.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| RUBY KUMAR, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-L-058** |
| USA INSULATION, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Willoughby Municipal Court, Case No. 2018 CVI 00517.

Judgment: Affirmed.

*Brian Christopher Mulhall*, Mulhall Law, LLC, 5735 State Road, Suite 100, Cleveland, OH 44134 (For Plaintiff-Appellant).

*Gregory P. Amend* and *Amanda M. Gatti*, Buckingham, Doolittle & Bourroughs, LLC, 1375 East Ninth Street, Suite 1700, Cleveland, OH 44115 (For Defendant-Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Ruby Kumar, appeals from an entry of the Willoughby Municipal Court granting judgment in favor of appellee, USA Insulation, on Ms. Kumar's claim for breach of contract. The judgment is affirmed.

{¶2} This matter emanates from a February 28, 2017 contract between the parties, whereby USA Insulation agreed to insulate the exterior walls of Ms. Kumar's residence in Lakewood, Ohio, with USA Premium Foam Insulation. The signed contract provides that Ms. Kumar agreed to pay $6,213.96.11, less a senior citizen discount in the

amount of $288.85. Ms. Kumar financed the project with a zero-interest loan through Wells Fargo. USA Insulation performed under the contract on or about March 13, 2017, but Ms. Kumar was not satisfied with that performance. Ms. Kumar filed a dispute with Wells Fargo. In response, USA Insulation sent a letter to Wells Fargo indicating it had sent a service representative to Ms. Kumar's house to investigate her concerns on March 20, 2017. The letter stated USA Insulation's service representative found some areas that needed follow-up attention, but Ms. Kumar refused to schedule an appointment with USA Insulation to address the concerns.

{¶3} Thereafter, Ms. Kumar paid a plumber and two other insulation companies to conduct diagnostic infrared testing and investigate her concerns with the work done by USA Insulation.

{¶4} On March 6, 2018, Ms. Kumar filed a small claims complaint against USA Insulation, alleging "incompletion of insulation of my home and fraudulent work." She requested judgment in the sum of $6,000.00, plus interest from the date of the complaint at the rate of 4% and court costs.

{¶5} The municipal court held a small claims trial on April 9, 2018. Ms. Kumar appeared pro se, as did the General Manager of USA Insulation, Jack Jones. Dustin Smith, Insulation Manager for USA Insulation, also testified.

{¶6} Ms. Kumar stated that when USA Insulation completed its work, she still had cold air coming through the walls of her home. She hired a plumber with an infrared gun to "see through the walls," and he informed her that the company had "missed some spots." Ms. Kumar then called two other insulation companies who took pictures, and they also told her there were areas not filled in with foam. She stated it appears there is less insulation in the walls now then there was when USA Insulation finished their work,

2

as though "it dissolves itself." Ms. Kumar stated she paid a total of $550.00 for these diagnostic appointments. Ms. Kumar also stated an employee from USA Insulation came out on March 20, 2018 (after the complaint had been filed) to perform an infrared inspection and gave her information about what needed to be completed.

{¶7} The court asked Ms. Kumar how much she had paid to USA Insulation and how much she still owed. Ms. Kumar first stated she had paid $6,000.00. The court then asked for a copy of the receipt. Ms. Kumar stated Wells Fargo has the receipt. The court, in an attempt to obtain proof from Ms. Kumar to support her claim for a monetary judgment, asked how much she had paid and how much she still owed. Ms. Kumar explained that she financed the contract price through Wells Fargo without interest. Ms. Kumar estimated she had made payments to Wells Fargo in an approximate amount of $4,000.00 or $4,500.00. However, she later stated, "So far – I think about a couple thousand dollars so far. I mean, my payments [sic] is like $98 a month but I pay them more, as a rule. Usually I pay them about 150."

{¶8} In response to the court's inquiry as to her request for a judgment in the amount of $6,000.00, Ms. Kumar explained she is asking for "all of my money back"; she stated the court should give Wells Fargo the money, who in turn could return the money to Ms. Kumar.

> THE COURT: That's not what this says. The judgment – you're asking for a judgment against them for you.
>
> MS. KUMAR: Yeah. And this is where the money's going to go. It's going to go back to Wells Fargo. That's – I won't owe them anything if – why should I pay them? Why should I keep on paying for something that I didn't get?
>
> THE COURT: I'm trying to understand what you've paid out of pocket. And what you owe. * * * So the problem is, is that I can't –

3

I need specifics from you. Not – I need to know what exactly have you paid, and you don't have that?

MS. KUMAR: No, I don't.

{¶9} Ms. Kumar presented exhibits, including the signed contract with USA Insulation; the installation warranty; pictures and statements from the other companies she called to evaluate the insulation; a check paid to Berry Insulation for "diagnostic insulation" in the amount of $300.00; a printout indicating a $50.00 debit charge to Northeast Plumbing; and a receipt from Affordable Foam for $150.00 to "consult and provide infrared photos of dwelling." Ms. Kumar did not, however, provide any statements from Wells Fargo or any information regarding the amount of her note or the amount Wells Fargo paid to USA Insulation under the terms of the note in support of her claim for $6,000.00.

{¶10} Jack Jones, General Manager of USA Insulation, stated the insulation was installed at Ms. Kumar's residence in March 2017. Ms. Kumar filed a dispute with Wells Fargo in April 2017. USA Insulation had attempted to revisit the residence to determine if it needed service. Mr. Jones explained that "sometimes after we do the work there is potential shrinkage or we miss a cavity here or there, without a doubt. This is not the first time something like this has happened. * * * Typically what we do is we go in after it's had a chance to settle and we fill in all the pockets." He stated that approximately five percent of the time, USA Insulation has to go back and do a thermal image check at no additional charge to the customer.

{¶11} Mr. Jones then presented a letter the company's administrative assistant had sent to Wells Fargo, dated May 4, 2017, in response to Ms. Kumar's dispute, which

explained that Ms. Kumar on several occasions would not allow USA Insulation to check the residence to see if it needed service. Specifically, the letter provides:

> In regards to Ms. Kumar's dispute, we sent our representative Rusty Pitrone out to Ms. Kumar's house on 3/20/17 to investigate her concerns. During this visit, Rusty found there were a couple spots that may need attention. I spoke to Ms. Kumar to try and schedule an appointment for the crew to come out and address her concerns. She refused to schedule an appointment, and wanted to know exactly what we were going to do while there. I offered to have our Operations Manager talk to her and again she refused to allow us to come out, while speaking with him. We do not have a signed service ticket because she refused to allow us to come out and address her concerns.

{¶12} Mr. Jones stated Ms. Kumar finally allowed an employee inside the home in March 2018 (after the complaint was filed), who attempted to write up a service ticket. As Mr. Jones explained:

> He got there and was attempting to do it. Miss Kumar has a tendency to get aggressive and abusive verbally, both on the phone with most of us and at the house. So he didn't complete as much as he would like to, but he was able to – this is not – you know, he crossed off 'work completed' because work wasn't completed. This is just a service ticket. And these are – if you look at the notes, it pretty much refers to that.

Mr. Jones provided a copy of the service ticket, dated March 20, 2018, which was signed by Ms. Kumar. The customer concerns are described as "check downspouts (connected, not connected) repair if needed; thermal image upstairs areas of concern; foam any areas that need attention." The work to be completed is described as "4 downspout caps where they attach to ground crock covers 4"; several 2nd floor windows & doors need foamed, no bathroom, tile on walls; fill 2x soffit boxes with blown fiberglass; all 2nd story windows & doors & 5 on first floor." Mr. Jones further stated, "we're happy to go out there and do whatever service is needed, if it's needed, based on the notes that are here. And, you know, we ask is that [sic] whomever we send there, our service manager or installation

5

manager, can go ahead and conduct the business without any, you know aggressiveness or any retaliation."

{¶13} The court then asked how Wells Fargo plays into the situation. Mr. Jones stated the total cost of the contract was $6,213.96 and that USA Insulation had been paid in full by Wells Fargo, who provided Ms. Kumar with an interest-free loan.

{¶14} Dustin Smith, the Insulation Manager for USA Insulation, testified that "the scope of work that we would have had to do to complete for her would have taken another three or four hours," which is why it could not be completed when they went to the residence at 3:00 p.m. on March 20, 2018. He described the issues they found as "minimal. Normal stuff that would happen in a house that size." Mr. Smith explained the amount of work that remained was somewhere between five to ten percent of the project, but that they have been met by Ms. Kumar with resistance when attempting to return to the residence.

{¶15} Also included in the record, but not referenced in any testimony, is an undated document titled, "Change Order/Incident Report Form and Release/Waiver Agreement." It is signed by a USA Insulation representative and provides, in part: "We agree to pay the cost incurred of $578.00 and to return in the late fall of 2017 to thermal image the home and fill any voids that are found and agreed upon."

{¶16} The court granted Ms. Kumar time to make a phone call to Wells Fargo to find out exactly how much she has paid and owes on the note. The recording of the trial ended, however, and there is no indication in the record that the information was ever obtained and presented to the court.

{¶17} On April 25, 2018, the court entered judgment in favor of USA Insulation, stating: "Based upon consideration of the evidence, the law, and the credibility of the

6

witnesses, Plaintiff failed to prove case [sic] by a preponderance of the evidence." This appeal followed, and Ms. Kumar has assigned two errors for our review:

> [1.] The trial court erred in requiring appellant to present evidence of out-of-pocket note payments to a third party as the measure of contract damages caused by appellee's admitted failure to complete performance.
>
> [2.] The trial court erred in determining that appellee's own admission of incomplete performance failed to constitute a breach of contract.

{¶18} Under her second assignment of error, which we review first, Ms. Kumar argues the trial court erred by finding USA Insulation's "admission of incomplete performance was legally insufficient to establish liability for breach of contract."

{¶19} "When the facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court." *Luntz v. Stern*, 135 Ohio St. 225 (1939), paragraph five of the syllabus. "Where the party obligated to perform under the contract makes an honest effort to do so, and there is no willful omission on its part, substantial performance is all that is required to entitle the party to payment under the contract." *Cleveland Neighborhood Health Serv., Inc. v. St. Clair Builders, Inc.*, 64 Ohio App.3d 639, 644 (8th Dist.1989), citing *Ashley v. Henahan*, 56 Ohio St. 559, 569 (1897). "'Substantial performance of a contract is interpreted to mean that mere nominal, trifling, or technical departures are not sufficient to break a contract, and that slight departures, omissions and inadvertencies should be disregarded.'" *Id.*, quoting *Kichler's, Inc. v. Persinger*, 24 Ohio App.2d 124, 126 (1st Dist.1970).

{¶20} Ms. Kumar's argument is not well taken. First, the lower court did not make a finding that USA Insulation admitted to incomplete performance: the court did not issue findings of fact and conclusions of law, pursuant to Civ.R. 52, nor did either party move the court to do so. Second, this argument is based on a false premise, to wit: that USA

7

Insulation admitted it did not fully perform under the contract. No such admission was made at the trial, the relevant portions of which have been provided above. Further, the undisputed facts in this record establish that USA Insulation performed substantially under the contract. Only five to ten percent of the project remained, or three to four hours of labor, in order to correct the issues raised by Ms. Kumar. The remainder of the project was not able to be completed, however, solely due to Ms. Kumar's refusal to allow USA Insulation into the home.

{¶21} Thus, we hold that the court did not err in failing to find that USA Insulation was liable for breach of contract.

{¶22} Ms. Kumar's second assignment of error is without merit.

{¶23} Under her first assignment of error, Ms. Kumar argues the trial court erred by requiring her to provide evidence of payments to Wells Fargo as proof of her economic damages, when there was no dispute that Ms. Kumar had fulfilled her payment obligation under the contract through financing with Wells Fargo.

{¶24} We agree with Ms. Kumar's general statement regarding the proper measure of damages in a breach of contract action. "[M]oney damages awarded for breach of contract are designed to place an aggrieved party in the same position he or she would have been had the contract not been breached." *Buckley v. Ollila*, 11th Dist. Trumbull No. 98-T-0177, 2000 WL 263739, *2 (Mar. 3, 2000), citing *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983). The party seeking damages bears the burden of establishing the nature and extent of those damages with reasonable certainty. *Nelson Sand & Gravel, Inc. v. Ring*, 11th Dist. Ashtabula No. 2001-A-0058, 2002-Ohio-6571, ¶18 (citations omitted).

8

**{¶25}** Ms. Kumar's argument is again, however, based on a false premise, to wit: that she was entitled to receive any contractual damages. Before damages may be awarded, the complaining party must first establish the existence of a contract and a breach of that contract, i.e., "the failure without legal excuse of the other party to perform when performance is due." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶41, citing *Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450 (1953), paragraph one of the syllabus.

**{¶26}** Here, the lower court entered a general verdict in favor of USA Insulation, and Ms. Kumar failed to request findings of fact and conclusions of law.

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

Civ.R. 52. "Except as inconsistent procedures are provided in this chapter or in rules of court adopted in furtherance of the purposes of this chapter, all proceedings in the small claims division of a municipal court are subject to the Rules of Civil Procedure[.]" R.C. 1925.16. "There is nothing in R.C. Chapter 1925 which makes Civ.R. 52 inapplicable to small claims cases or which would preclude a party from obtaining separate findings of fact and conclusions of law." *Ohio Valley Laundry & Dry Cleaners v. Kent*, 4th Dist. Gallia No. 85 CA 24, 1986 WL 12633, *1 (Nov. 10, 1986); *Larko v. Dearing*, 11th Dist. Ashtabula No. 2013-A-0007, 2013-Ohio-4304, ¶28.

**{¶27}** "'Where a trial court hears and determines a cause without the intervention of a jury and does not make separate findings of fact and conclusions of law, and no

9

request is made therefor, and any evidence is adduced to support the conclusions reached under proper rules of law applicable thereto, a reviewing court will presume that all proper rules of law were applied.'" *French v. Weldy*, 11th Dist. Ashtabula No. 93-A-1792, 1994 WL 660577, *2 (Nov. 18, 1994), quoting *Scovanner v. Toelke*, 119 Ohio St. 256 (1928), paragraph four of the syllabus; *see also Pettet v. Pettet*, 55 Ohio App.3d 128, 130 (5th Dist.1988).

{¶28} There is no question that a contract existed between Ms. Kumar and USA Insulation. Evidence was adduced at the small claims trial to support the lower court's general verdict, however, in that Ms. Kumar did not establish a breach of that contract. Because Ms. Kumar did not request findings of fact and conclusions of law, we presume the lower court correctly applied the law in this regard. Ms. Kumar has failed to show that the lower court applied an improper standard for liability or damages in this breach of contract action. It is apparent from a review of the transcript that the court's questioning with regard to Wells Fargo was merely an attempt to determine the amount that USA Insulation had already been paid under the contract and whether any amount was still owed to USA Insulation.

{¶29} Ms. Kumar's first assignment of error is without merit.

{¶30} The judgment of the Willoughby Municipal Court is hereby affirmed.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

10